LESLIE A. TRAVIS
leslie.travis@guam.gov
JEFFREY A. MOOTS
jeffrey.moots@guam.gov
DANIEL MORRIS
daniel.morris@guam.gov
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Office: (671) 473-1118 | Fax: (671) 477-4826
*Attorneys for Defendant*
*Lourdes A. Leon Guerrero, Governor of Guam*

ELISEO M. FLORIG, JR.
emflorig@ghura.org
**GUAM HOUSING AND URBAN RENEWAL AUTHORITY**
117 Bien Venida Avenue,
Sinajana, Guam 96910
Office: (671) 477-9851 | Fax: (671) 300-7565
*Attorney for Defendant*
*Guam Housing and Urban Renewal Authority*

## IN THE UNITED STATES DISTRICT COURT
## TERRITORY OF GUAM

| | |
|---|---|
| GOVERNMENT OF GUAM and DOUGLAS B. MOYLAN, in his official capacity as the Attorney General of Guam,<br><br>Plaintiffs,<br><br>v.<br><br>LOURDES A. LEON GUERRERO, in her official capacity as the Governor of Guam and the GUAM HOUSING AND URBAN RENEWAL AUTHORITY, a Public Body Corporate and Politic,<br><br>Defendants. | CIVIL CASE NO. 24-00029<br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO STRIKE AND TO DISMISS**<br>**(F.R.C.P. 8, 12(b)(1), 12(b)(6), 12(f) and 21)** |

1

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................1

II.   ARGUMENTS.....................................................................................2

A.  Motion to Strike .............................................................................2

    1.  The Government of Guam is not a party to this action and
        should be stricken from the Complaint as a Plaintiff............................2

    2.  Guam law does not authorize AG Moylan to initiate actions
        against the Governor on behalf of the Government of Guam
        at his whim. ........................................................................6

B.  Motion to Dismiss...........................................................................8

    1.  Count I should be dismissed because it does not raise a federal
        question and does not state a claim............................................8

        a.  Alleged violations of the Organic Act do not qualify as
            a civil action arising under "the laws of the United
            States" for federal question purposes...........................................8

    2.  Count I also fails to state a claim upon which relief can be
        granted because ARPA is a direct federal appropriation to
        Guam that falls outside of the Legislature's appropriation
        authority. ...........................................................................9

C.  Counts II – VIII, alleging violations of ARPA, are not federal claims. ..............11

    1.  ARPA does not provide a private cause of action. ................................11

    2.  Counts III, V, VI, VII, and VIII should also be dismissed
        because alleged violations of Guam law do not constitute
        federal claims......................................................................12

D.  The Court should decline to exercise its supplemental jurisdiction. ...................15

E.  Even were the Court to exercise jurisdiction over AG Moylan's
    Complaint, the complaint  fails to state a claim upon which relief can
    be granted..........................................................................17

    1.  Counts II and IX fail because they do not state a claim. .......................18

i

2. Counts III and VII fail because the allegations do not allege facts that plausibly AG Moylan to relief. ............................................... 19

3. Count IV fails because GHURA's acquisition of property for the MMC Project is not subject to the National Environmental Policy Act. ....................................................................................... 21

    a. Relevant Law and Regulations ...................................... 21
        i. The National Environmental Policy Act ........................... 21
        ii. American Rescue Plan Act and amendments, and Treasury Rules .......................................... 24

    b. GHURA's acquisition of the MMC Property does not trigger NEPA .............................................................. 29
        i. Acquisition of the MMC Property was made under Section 803(c)(1) of ARPA, and it is therefore not subject to NEPA ......................................... 29
        ii. Even if the MMC Property were acquired under the Title I authorization of Section 803(c)(6), it would not be required to undergo environmental review because GHURA's actions do not qualify as a major federal action under NEPA ................ 30

4. Counts V, VI, and VIII fail because Guam law does not impose the requirements alleged in the Complaint. .............................. 33

**III.    CONCLUSION** ....................................................................................... **36**

# CASES

*A.B. Won Pat Guam Int'l Airport Auth. ex rel. Bd. of Directors v. Moylan*,
2005 Guam 5 ...................................................................................................................2

*Almond Hill Sch. v. U.S. Dep't of Agric.*,
768 F.2d 1030 (9th Cir.1985) .......................................................................................22

*Am. Well Works. Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). ....................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................17, 18, 19

*Atlanta Coalition on Transp. Crisis Inc v. Atlanta Regional Commission*,
599 F.2d. 1333 (5th Cir. 1979) ................................................................................23, 31

*Balboni v. Ranger Am. of the V.I., Inc.*,
70 V.I. 1048 (V.I. 2019) ..................................................................................................8

*Bd. of Comm'rs v. RKKP 2 LLC*,
2024 WL 83027 (N.D. Ohio Jan. 8, 2024) ..................................................11, 14, 15

*Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1180 n.5 (9th Cir. 2016) ..........................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................17, 19

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017) ..........................................................................19

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ......................................................................................................16

*Cascadia Wildlands v. United States Dep't of Agric.*,
752 Fed. Appx. 457 (9th Cir. 2018) ....................................................................22, 23, 31

*Champlaie v. BAC Home Loans Servicing, LP*,
706 F. Supp. 2d 1029 (E.D. Cal. 2009) ..........................................................................18

*Chapman v. Mnuchin*,
2024 WL 4248783 (S.D. W. Va. Aug. 6, 2024) ..............................................................11

*Chun v. Board of Trustees of Employees' Retirement System of State of Hawaii*,
952 P.2d 1215 (Haw. 1998) .............................................................................................4

Case 1:24-cv-00029     Document 6     Filed 01/13/25     Page 4 of 47

*Churchill Cnty. v. Norton*,
276 F.3d 1060 (9th Cir. 2001) ...................................................................................22

*City of Crossgate v. U.S. Dep't of Veterans Affairs*,
526 F. Supp. 3d 239 (W.D. Ky. 2021)........................................................................30

*City of Oakland v. BP PLC*,
969 F.3d 895, 905 (9th Cir. 2020) .............................................................................13

*Cmty. Place v. Mid S. Rehab Servs., Inc.*,
43 F. Supp. 3d 687 (S.D. Miss. 2014) .......................................................................14

*Crawford v. Antonio B. Won Pat Int'l Airport Auth., Guam*,
2017 WL 3736645 (D. Guam Aug. 30, 2017)............................................................16

*Dir.,Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*,
514 U.S. 122 (1995) .....................................................................................................7

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ......................................................................................19

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 671 (2006). ..................................................................................................12

*Franchise Tax Bd. V. Constr. Laborers Vacation Trust*,
463 U.S. 1 (1983) .......................................................................................................15

*Friends of the Columbia Gorge v. Bonneville Power Admin.*,
716 Fed. Appx. 681, 682 (9th Cir. 2018) .................................................................23

*Friends of the Earth, Inc. v. Coleman*,
518 F.2d 323 (9th Cir. 1975) ....................................................................................23

*Goffney v. Bank of America NA*,
897 F. Supp. 2d 520 (S.D. Tex. 2012)..........................................................13, 15, 15

*Gov't of Guam v. Kaanehe*,
137 F. Supp. 189 (D. Guam 1956) ..............................................................................8

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
776 F. Supp. 1422 (D. Guam 1990) ............................................................................9

*Gunn v. Minton*,
568 U.S. 251 (2013) ...................................................................................................12

iv

*Haeuser v. Dep't of Law*,
    97 F.3d 1152 (9th Cir. 1996) ..............................................................3

*HICA Education Loan Corp. v. Rodriguez*,
    31 F. Supp. 3d 351 (D.P.R. 2014) ......................................................14

*In re Leon Guerrero*,
    2023 Guam 11 ......................................................................................9

*In re Leon Guerrero*,
    2024 Guam 18 ..................................................................................3, 9

*Johnson v. HAF*,
    2024 WL 4057520 (D. Or. Sept. 5, 2024) ..........................................11

*Ka Makani 'O Kohala Ohana Inc. v. Water Supply*,
    295 F.3d 955 (9th Cir. 2002 .........................................................24, 33

*Kileleman v. Unpingco*,
    2024 WL 3822849 (D. Guam Aug. 15, 2024) ....................................18

*Law Offices of Phillips & Bordallo, P.C. v. Leon Guerrero*,
    2023 WL 5075374 (Aug. 9, 2023) ...................................................8, 9

*Macht v. Skinner*,
    916 F.2d 13 (D.C. Cir 1990) ........................................................22, 23

*Marsh v. Oregon Natural Resources Council*,
    490 U.S. 360 (1989) ...........................................................................22

*Merrell Dow Pharms. Inc. v. Thompson*,
    478 U.S. 804 (1986) ...........................................................................12

*Moncure v. Olympus Am., Inc.*,
    290 F. Supp. 2d 726 (S.D. Miss. 2003) ..............................................14

*Nat'l Audubon Soc'y v. Dep't of Navy*,
    422 F.3d 174 (4th Cir. 2005) ..............................................................30

*People ex rel. Deukmejian v. Brown*,
    624 P.2d 1206 (Cal. 1981).....................................................................5

*People of Guam v. Mallo*,
    2008 Guam 23 ....................................................................................21

v

*People v. Adriatico*,
2024 Guam 7 ........................................................................................................9

*Perry v. Bd. of Cnty. Comm'rs*,
132 P.3d 1279 (Kan. 2006)..................................................................................16

*Philips v. Pitt Cnty. Mem'l Hosp., Inc.*,
2019 WL 4794514 (D. Guam Sept. 30, 2019).........................................................12

*Portaluppi v. Fortifi Fin., Inc.*,
2021 WL 3269978 (C.D. Cal. July 30, 2021)...........................................................19

*Prison Legal News v. Ryan*,
39 F.4th 1121 (9th Cir. 2022) ................................................................................3

*Reinbold v. Alaska Airlines*,
2024 WL 553552 (D. Alaska Feb. 12, 2024) ...........................................................11

*Republican Party of Guam v. Gutierrez*,
277 F.3d 1086 (9th Cir. 2002) ..............................................................................15

*Riley v. Cornerstone Cmty. Outreach, Inc.*,
57 So. 3d 704 (Ala. 2010)..............................................................................3, 5, 8

*Rinehart v. Rinehart*,
2000 Guam 14 ......................................................................................................7

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989) ...........................................................................................21

*Saloojas, Inc. v. Aetna Health of California, Inc.*,
80 F.4th 1011 (9th Cir. 2023) ..............................................................................11

*Santos v. Camacho*,
2006 WL 581251 (D. Guam Mar. 10, 2006) ................................................ *passim*

*Sierra Club v. Hodel*,
848 F.2d 1068 (10th Cir. 1988) ............................................................................22

*Silvers v. Sony Pictures Entm't, Inc.*,
402 F.3d 881 (9th Cir. 2005) .................................................................................7

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ...............................................................................18

vi

*Story-Bernardo v. Gov't of,*
  *Guam*, 2023 Guam 27 ...................................................................................10, 11

*Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*,
  243 F.3d 270 (6th Cir. 2001) ...............................................................21

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) ...............................................................................17

*United States v. 0.95 Acres of Land*,
  994 F.2d 696 (9th Cir. 1993) ...............................................................30

*United States v. S. Fla. Water Mgmt. Dist.*,
  847 F. Supp. 1567 (S.D. Fla. 1992) ....................................................32

*United States v. Smith*,
  2021 WL 5237969 (D. Guam Nov. 10, 2021) ....................................21

*United States v. State of La.*,
  751 F. Supp. 608 (E.D. La. 1990) ..........................................................4

*Vill. of Los Ranchos de Albuquerque v. Barnhart*,
  906 F.2d 1477 (10th Cir. 1990) ......................................................22, 23

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ...............................................................20

*W. Sys. V. Ulloa*,
  958 F.2d 864 (9th Cir. 1992) .................................................................9

*Wong v. Camina*, 2 Guam R. 132, 132 (D. Guam 1978)). ...................10, 11

*Yaritz v. Internal Revenue Serv.*,
  2023 WL 5756462 (D. Minn. Apr. 26, 2023) .....................................11

## STATUTES

5 G.C.A. § 30102 ....................................................................................2

5 G.C.A. § 30109 .................................................................................2, 6

5 GCA § 8101 ........................................................................................13

5 GCA § 8107(d) ...................................................................................13

5 GCA § 10101 ......................................................................................13

5 GCA § 10108(i) ............................................................................................20

5 GCA § 22101 ...............................................................................................13

5 GCA § 32116 .................................................................................................6

6 GCA § 7102 ...................................................................................................6

7 GCA § 4104 ...................................................................................................9

7 GCA § 35106 .................................................................................................6

9 GCA § 80.50(e) ............................................................................................21

11 GCA § 32103 ...............................................................................................6

12 GCA § 5101 ...............................................................................................12

12 GCA § 5104 ...............................................................................................33

12 GCA § 5110 ...............................................................................................33

21 GCA § 15107 ...............................................................................................6

21 GCA § 23101 ...............................................................................................6

28 U.S.C. § 1331 ...............................................................................................8

28 U.S.C. § 1367 .......................................................................................15, 16

42 U.S.C. § 4321 .............................................................................................21

42 U.S.C. § 4332(2)(C) ...................................................................................22

42 USC § 803(c)(1) ....................................................................................*passim*

42 USC § 803(c)(6) ....................................................................................*passim*

48 U.S.C. 1421g(d)(1) .......................................................................................2

48 U.S.C. § 1422 ...............................................................................................3

48 U.S.C. § 1423j(a) ........................................................................................10

Public Law No. 117-2 ......................................................................................24

viii

Public Law No. 117-328 .................................................................................................................27

# RULES

Fed. R. Civ. P. 8(a) .....................................................................................................................18

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................17

Fed. R. Civ. P. 12(f)(1) ..................................................................................................................2

Fed. R. Civ. P. 21 ..........................................................................................................................2

Fed. R. Evid. 201 ........................................................................................................................21

Guam R. Civ. P. 17 ........................................................................................................................7

# REGULATIONS

2 CFR Part 200............................................................................................................................17

40 CFR § 1508.18........................................................................................................................30

Coronavirus State and Local Fiscal Recovery Funds,
    86 Fed. Reg. 26,786 (May 17, 2021).....................................................................................25

Coronavirus State and Local Fiscal Recovery Funds,
    87 Fed. Reg. 4338 (Thursday January 27, 2022).........................................................10, 25, 29

Coronavirus State and Local Fiscal Recovery Funds,
    88 Fed. Reg. 64986 (Wednesday, September 20, 2023) .........................................................28

## I.   INTRODUCTION

The American Rescue Plan Act of 2021 ("ARPA"), enacted on March 11, 2021, distributed $1.9 trillion in federal aid to states and territories to aid public health and economic recovery from the COVID-19 pandemic, including over $600 million to Guam. Over the intervening years, Defendant Governor Lourdes A. Leon Guerrero, *I Maga'hågan Guåhan*, Governor of Guam, has allocated Guam's ARPA funds to various agencies and programs to address the priority needs of our community. As of December 20, 2024, the date Plaintiff Douglas B. Moylan, Attorney General of Guam ("AG Moylan"), filed his Complaint in this matter, over $450 million in ARPA funds, representing over three quarters of available funding, had been obligated.

After two (2) years of signing contracts obligating and expending hundreds of millions of dollars of ARPA funding, AG Moylan has suddenly surfaced to challenge the legality of the Governor's act of obligating or using ARPA funds without Legislative authorization, approval, or appropriation. Even *after* filing his Complaint in this matter, AG Moylan has approved the legality of other contracts obligating such funds. It is clear from AG Moylan's inconsistent actions that he does not actually have a *legal* objection to the Governor's use of ARPA funds without Legislative approval, he has a *political* objection to her specific decision to direct ARPA funds to a particular project: the Mangilao Medical Campus Project (the "MMC Project").

However, AG Moylan's Complaint is defective, his understanding of the rules governing the use of ARPA funds issued by the U.S. Department of the Treasury ("Treasury") is stunted, his legal allegations are devoid of any basis for federal jurisdiction, and his legal analysis is underbaked and unsound. For the reasons stated herein, the Court should grant Defendants Governor Leon Guerrero and Guam Housing and Urban Renewal Authority's ("GHURA") Joint Motion to Strike and to Dismiss.

1

## II.     ARGUMENT

### A. Motion to Strike

#### 1.   The Government of Guam is not a party to this action and should be stricken from the Complaint as a Plaintiff.

Notwithstanding how AG Moylan captioned his Complaint, he has no authority, statutory or otherwise, to bring this action in the name of the Government of Guam. As such, the Court should strike "Government of Guam" from the caption and Paragraph 3 of the Complaint as "redundant, immaterial, impertinent" matter under Fed. R. Civ. P. 12(f)(1) and pursuant to Fed. R. Civ. P. 21, providing that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."

The Organic Act of Guam provides that the Attorney General of Guam "shall be the Chief Legal Officer of the government of Guam." 48 U.S.C. § 1421g(d)(1). While the Organic Act does not expressly define the Attorney General's powers, the Supreme Court of Guam has held that, in addition to the powers and duties conferred on him by the Guam Legislature, the Attorney General "is charged with all the common-law powers and duties pertaining to his office, except insofar as they have been expressly restricted or modified by statute." *A.B. Won Pat Guam Int'l Airport Auth. ex rel. Bd. of Directors v. Moylan*, 2005 Guam 5 ¶ 62. Guam law in turn provides that the Attorney General shall have cognizance of all legal matters involving the Executive Branch of the government of Guam, 5 G.C.A. § 30102, and shall conduct on behalf of the government of Guam "all civil actions in which the government is an interested party...." 5 G.C.A. § 30109(c).

Though the Organic Act establishes executive branch entities such as the Attorney General and the Public Auditor, the Organic Act *exclusively* vests the executive power of Guam in the Governor of Guam, who "shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." 48 U.S.C. § 1422. While the Attorney General

2

holds considerable power under Guam law and the common law, such powers must be interpreted in a manner that preserves the constitutional reality that the Governor exclusively holds the executive power of the Government of Guam. *See Prison Legal News v. Ryan*, 39 F.4th 1121, 1131 (9th Cir. 2022) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems.").

The Organic Act, which "serves the function of a constitution for Guam," *Haeuser v. Dep't of Law*, 97 F.3d 1152, 1156 (9th Cir. 1996), renders the Attorney General inferior to the Governor. *See Santos v. Camacho*, CIV.04-00006, 2006 WL 581251, at *5 (D. Guam Mar. 10, 2006) (permission to appeal denied by the circuit court) ("[T]he Governor is the executive officer of the territory, and has power over the Attorney General."); *see also In re Request of Lourdes A. Leon Guerrero*, 2024 Guam 18 (finding that the Governor has the power to supersede the Attorney General's authority, discretion, or representation in "circumstances that threaten her duty to ensure the proper function of the executive branch") (citing *Riley v. Cornerstone Cmty. Outreach, Inc.*, 57 So. 3d 704, 733 (Ala. 2010) ("If the governor's 'supreme executive power' means anything, it means that when the governor makes a determination that the laws are not being faithfully executed, he can act using the legal means that are at his disposal.")). "There is a constitutional hierarchy within the Executive Branch and one office—the Governor—is at its top. The 'supreme executive power' is more than a 'mere verbal adornment' of the office of Governor." *Id*. at 740.

Because the Governor is the executive officer of the Government of Guam and the Attorney General is merely the chief legal officer of the Government of Guam, "the Attorney General is an executive officer operating under the Governor. Thus, the Attorney General does not replace the Governor as spokesman for the State whenever the Attorney General attempts to enter a legal proceeding." *United States v. State of La.*, 751 F. Supp. 608, 617 (E.D. La. 1990).

In *Santos v. Camacho*, this Court considered whether the Attorney General or the Governor was the proper representative of the Government of Guam in the proceeding. The Court observed that the "Government of Guam" was a distinct legal entity and interest from the "people of Guam" or "a generalized public interest." *Santos*, 2006 WL 581251, at *5. While acknowledging that the Governor had an additional specific interest in matters concerning the Guam Territorial Income Tax, over which the Governor had enumerated administrative and enforcement powers, the Court held that, broadly, the Governor, as the executive officer of Guam, has authority over the Attorney General in Government of Guam litigation:

> The court concludes the Governor is the executive officer of the territory, and has power over the Attorney General. *The Attorney General is the attorney representing his client, the Government of Guam. Accordingly, the Attorney General should not replace the Governor in setting policy whenever he disagrees with the Governor's positions.*

*Id.* (emphasis added) (citing *Chun v. Board of Trustees of Employees' Retirement System of State of Hawaii,* 952 P.2d 1215, 1234 (Haw. 1998) ("[W]e do not accept the Attorney General's contention that, merely because she regards her duty to represent the 'state's' legal interests as being paramount to her duty to represent her statutory client's legal interests, she may, in her sole discretion, so control the course of litigation as to advance her view of the 'public welfare' when it squarely conflicts with the substantive position taken by the policymaking state governmental instrumentality whom she represents as a named party to the litigation").

These findings apply with equal force in this matter. It is the Governor, not the Attorney General, who has ultimate authority to speak on behalf of the Government of Guam to ensure the faithful execution of Guam law, even in litigation. Under the Organic Act, the Attorney General has the power to serve as legal advisor to and representative of the Government of Guam and as such has power to exercise professional discretion to organize and develop legal arguments to reflect and vindicate the policy-decisions of Government of Guam executives, but he does not

4

himself make policy decisions for the Government of Guam. His designation as chief legal officer of the Government of Guam did not repeal the Organic Act provisions vesting the Governor with the executive power of Guam and constitutional responsibility to ensure faithful execution of the law. *Cf. Santos*, 2006 WL 581251, at *4-5.

AG Moylan may not purport to speak on behalf of the Government of Guam contrary to the Governor's position in litigation, and in doing so replace the Governor "in setting policy [when] he disagrees with the Governor's position[]." *Santos*, 2006 WL 581251, at *5; *see also Riley*, 57 So. 3d at 738 ("[T]he phrase '[a]ll litigation concerning the interest of the State, or any department thereof, shall be under the direction and control of the attorney general' does not vest in the attorney general the authority to make substantive policy decisions concerning matters in litigation."); *Cf. People ex rel. Deukmejian v. Brown*, 624 P.2d 1206, 1209 (Cal. 1981) ("The Attorney General insists…that he has a common law right, undefined and unrestrained, to sue in his role as 'the People's legal counsel' the Governor and other public officials and agencies. This claim presupposes that the Attorney General may determine, contrary to the views of the Governor, wherein lies the public interest. The constitutional pattern is crystal clear: if a conflict between the Governor and the Attorney General develops over the faithful execution of the laws of this state, the Governor retains the 'supreme executive power' to determine the public interest….").

The Attorney General's authority to direct and control litigation on behalf of the Government of Guam under Guam law and the common law is necessarily limited by the Governor's supreme executive power and duty to ensure faithful execution of the law under the Organic Act. To hold that the Attorney General, legal advisor to the Government of Guam, may sue the Governor, the chief executive officer of Guam, in the name of the Government of Guam,

5

would infringe upon the Governor's supreme executive power and turn the Organic Act structure on its head.

### 2. Guam law does not authorize AG Moylan to initiate actions against the Governor on behalf of the Government of Guam at his whim.

As discussed, the Attorney General is not authorized to assert a position in litigation on behalf of the Government of Guam that conflicts with the position of the Governor, who holds the executive power of the Government of Guam and the sole constitutional responsibility to ensure the faithful execution of Guam law. In addition to the Organic Act defect of AG Moylan's allegations purporting to represent the Government of Guam in this matter, his Complaint is defective under Guam law.

While Guam law vests the Attorney General with authority to bring certain actions in the name of the Government of Guam in specific actions, AG Moylan has not identified a statute that authorizes him to sue in the name of the Government of Guam in this action. Guam law codifies several statutes specifically authorizing the Attorney General to sue third parties on behalf of the Government of Guam *and in the name of the Government of Guam*, including: (1) 21 GCA § 15107 (condemnation actions); (2) 11 GCA § 32103 (to collect taxes in other states); (3) 6 GCA § 7102 (citizenship or residency); (4) 5 GCA § 32116 (consumer protection); (5) 21 GCA § 23101 (civil nuisance); and (6) 7 GCA § 35106 (to escheat unclaimed bank deposits).

In contrast, the general statute authorizing the Attorney General to conduct civil actions on behalf of the Government of Guam does not authorize the Attorney General to bring such actions *in the name of the Government of Guam*: "[t]he Attorney General is the public prosecutor and…shall...conduct on behalf of the government of Guam all civil actions in which the government is an interested party[.]" 5 GCA § 30109. The Guam Legislature has demonstrated that when it intends for the Attorney General to bring suit in the name of the Government of Guam,

6

it will say so. Cf. *Rinehart v. Rinehart*, 2000 Guam 14 ("The fact that some Guam laws provide for telephonic testimony implies that Guam lawmakers would have included it in the testimonial rules if they truly desired it."); *see also Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 129 (1995) ("The United States Code displays throughout that when an agency in its governmental capacity is meant to have standing, Congress says so. The LHWCA's silence regarding the Secretary's ability to take an appeal is significant when laid beside other provisions of law."); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("Congress's explicit listing of who *may* sue for copyright infringement should be understood as an *exclusion of others* from suing for infringement. The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.") (emphasis in original). The Attorney General does not have the authority to file in the name of the Government of Guam at his own whim, and in so doing usurp the Guam Legislature's authority to identify the actions in which he may do so.

Rule 17(a) of the Guam Rules of Civil Procedure similarly and persuasively gives meaning to the distinction between statutes authorizing actions in the name of the Government of Guam and those that do not, and limits actions brought in the name of the Government of Guam to instances "when a statute of Guam so provides." Guam R. Civ. P. 17. This distinction must also be given meaning here, and the Attorney General's attempt to sue the Governor in the name of the Government of Guam should be firmly rejected.

To the extent, therefore, that the Attorney General disagrees with the Governor's interpretation of the law or position in litigation and he feels compelled to protect his interpretation of the public interest, he may simply sue the Governor in his own name. *See Riley*, 57 So. 3d at

737 ("The unique position of the Attorney General requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the Attorney General's personal opinion. If the public interest is involved, he may intervene to protect it.").

Accordingly, AG Moylan is not authorized to bring this action in the name of the Government of Guam, and the Government of Guam should be stricken from the Complaint.

## B. Motion to Dismiss

### 1. Count I should be dismissed because it does not raise a federal question and does not state a claim.

#### a. Alleged violations of the Organic Act do not qualify as a civil action arising under "the laws of the United States" for federal question purposes.

Count I does not state a federal question because the Organic Act and its appropriations provisions are not laws "of the United States" for purposes of federal question jurisdiction under 28 U.S.C. § 1331. *See Law Offices of Phillips & Bordallo, P.C. v. Leon Guerrero*, Civil Case No. 22-00020, 2023 WL 5075374, at *4 (Aug. 9, 2023).

The Organic Act was enacted pursuant to Congress's Article IV rather than Article I authority. *Law Offices*, 2023 WL 5075374, at *4. This is significant because "while laws enacted by Congress in its capacity as a national legislature pursuant to its Article I powers are considered 'laws of the United States,' laws enacted by Congress through invocation of its Article IV powers are not…." *Id.* (quoting *Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1071-72 (V.I. 2019)).

Further, the Organic Act and particularly any of its provisions relating to local appropriations are matters of local concern, "distinguish[able] from [] law[s] of general application throughout the United States." *Id.* (quoting *Gov't of Guam v. Kaanehe*, 137 F. Supp. 189, 190 (D. Guam 1956)). Indeed, the "Organic Act of Guam is a federal statute concerning *only* Guam." *Id.*

at *5 (quoting *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422, 1427 (D. Guam 1990), *aff'd* 962 F.2d 1366 (9th Cir.), *cert. denied* 506 U.S. 1011 (1992)).

Finally, as stated, the Organic Act "serves the function of a constitution for Guam," *Haeuser,* 97 F.3d at 1156, and "although 'Guam is not a state… the principles of federalism which underlie federal-state judicial relations apply equally to federal-Guamanian relations," *Law Offices*, 2023 WL 5075374, at *5 (quoting *W. Sys. V. Ulloa*, 958 F.2d 864, 868 n.5 (9th Cir. 1992)). This concern is particularly pressing as Guam courts continue to progress the understanding of that constitution. *See, e.g., In re Leon Guerrero*, 2024 Guam 18 ¶¶ 46, 63, 67, 72 (holding that the Attorney General is bound by Guam's ethical rules and that, when the Attorney General refuses to discharge his duties, the Governor may intervene to protect the interests of Guam), *petition for cert. filed* Dec. 31, 2024 (No. 24-701); *People v. Adriatico*, 2024 Guam 7 ¶ 50 (holding that Guam courts remain free to interpret the Organic Act Bill of Rights to provide broader rights than analogous provisions of the U.S. Constitution); *In re Leon Guerrero*, 2023 Guam 11 ¶¶ 18-24 (7 GCA § 4104 declaratory judgment mechanism consistent with Organic Act and standing requirements adopted by the Supreme Court of Guam), *petition for cert. denied*, --- S. Ct. ----, 2024 WL 4426533 (Oct. 7, 2024).

### 2. Count I also fails to state a claim upon which relief can be granted because ARPA is a direct federal appropriation to Guam that falls outside of the Legislature's appropriation authority.

Direct federal appropriations are expressly excepted by the Organic Act from the Legislature's appropriation authority, a fact that is fatal to Count I. The Organic Act provides that "[a]ppropriations, except as otherwise provided in this chapter, *and except such appropriations as shall be made from time to time by the Congress of the United States*, shall be made by the legislature." 48 U.S.C. § 1423j(a) (emphasis added). By this provision, "Congress has… retained

the power to… directly appropriate sums from the U.S. Treasury to Guam." *Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶ 42 (quoting *Wong v. Camina*, 2 Guam R. 132, 132 (D. Guam 1978)). Further, "once such appropriation has been made, it is available for local use notwithstanding any local law requiring reappropriation." *Id.*

Thus, the Guam Legislature has no authority over funds that: "(1) have a specific purpose; (2) are fully federal (no local funding required); and (3) have no requirement to be under local control." *Story-Bernardo*, 2023 Guam 27 ¶ 43.

In *Story-Bernardo*, the Guam Supreme Court rejected the argument that Coronavirus Aid, Relief, and Economic Security (CARES) Act funds awarded to Guam were subject to appropriation by the Guam Legislature, finding that such funds were awarded for a specific purpose—to fund "expenditures 'due to' COVID-19." *Id.* ¶ 45. Similarly, APRA "established the Coronavirus State and Local Fiscal Recovery Funds (SLFRF) to provide state, local, and Tribal governments with the resources needed to respond to the pandemic and its economic effects and to build a stronger, more equitable economy during the recovery." *See* Declaration of Daniel Morris in Support of Joint Motion to Strike and Dismiss ("Morris Decl."), Ex. C. (Coronavirus State and Local Fiscal Recovery Funds, 87 Fed. Reg. 4338 (Thursday January 27, 2022)) ("2022 Final Rule") at 4438.[1] As it did with the CARES Act funds, Treasury has issued rules that list nonexclusive eligible expenditures for ARPA, which expressly include construction of a new hospital as an appropriate capital expenditure project under multiple categories of eligible uses.

---

[1] The various rules, overviews, and FAQs are available for public viewing at the Treasury website. For the Court's convenience, the rules referenced in this Memorandum are attached to the Declaration of Daniel Morris in Support of Joint Motion to Strike and Dismiss, filed concurrently herewith.

10

*Id.*, Ex. C. at 4408, 4372 and Ex. D (U.S. Department of the Treasury, Coronavirus State & Local Fiscal Recovery Funds: 2022 Overview of the Final Rule) at 4, 11, and 20.

As in *Story-Bernardo*, ARPA is "fully federal" and does not require local funding; AG Moylan has not alleged otherwise. ARPA includes no requirement of local control by local appropriation, and AG Moylan has not alleged otherwise, including in the dozens of contracts obligating or utilizing ARPA funds without legislative appropriations that the Office of the Attorney General has approved since AG Moylan took office.

Contrary to AG Moylan's Complaint, the Governor's expenditure of these federal funds is fully consistent with the express intent of the Organic Act. The governing law in this area is not novel—dating back more than sixty (60) years to the *Wong* decision—and was reaffirmed in the Guam Supreme Court's 2023 decision in *Story-Bernardo*. Accordingly, Count I should be dismissed for failure to state a claim because the Organic Act does not require reappropriation of ARPA funds by the Guam Legislature.

## C. Counts II – VIII, alleging violations of ARPA, are not federal claims.

### 1. ARPA does not provide a private cause of action.

AG Moylan's "Violation of ARPA/SLFRF" counts (II – VIII) fail because "ARPA does not confer a private right of action." *Bd. of Comm'rs v. RKKP 2 LLC*, Case No. 3:23 CV 1764, 2024 WL 83027, at *5 (N.D. Ohio Jan. 8, 2024); *see also, e.g., Johnson v. HAF*, No. 6:24-CV-01141-AA, 2024 WL 4057520, at *4 (D. Or. Sept. 5, 2024) ("ARPA does not provide a private right of action."); *Chapman v. Mnuchin*, No. CV 1:24-00179, 2024 WL 4248783, at *3 (S.D. W. Va. Aug. 6, 2024), *report and recommendation adopted,* 2024 WL 4245434 (S.D.W. Va. Sept. 19, 2024) ("[N]either the CARES Act nor the CAA nor the ARPA provide for a private right of action."); *Yaritz v. Internal Revenue Serv.*, No. 23-CV-452 (PJS/LIB), 2023 WL 5756462, at *3

(D. Minn. Apr. 26, 2023), *report and recommendation adopted,* 2023 WL 5321063 (D. Minn. Aug. 18, 2023) ("[F]ederal district courts have interpreted neither the CARES Act, nor the CAA, nor the ARPA as providing for a private right of action."). ARPA does not authorize AG Moylan to sue, and his Complaint has made no showing to the contrary.

As a result, Counts II through VIII should be dismissed. *See Saloojas, Inc. v. Aetna Health of California, Inc.*, 80 F.4th 1011, 1016 (9th Cir. 2023) (affirming dismissal of CARES Act claims because no there was no private right of action); *Reinbold v. Alaska Airlines*, No. 3:23-CV-00087-JMK, 2024 WL 553552, at *7 (D. Alaska Feb. 12, 2024) (dismissing an Air Carrier Access Act claim because no private cause of action exists under the statute).

### 2. Counts III, V, VI, VII, and VIII should also be dismissed because alleged violations of Guam law do not constitute federal claims.

Counts III, V, VII, and VIII inadequately allege violations of Guam law and do not plead federal claims. As Justice Holmes famously held: "A suit arises under the law that creates the cause of action." *Am. Well Works. Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 813 (1986). Instead, the "few cases" that fall into the "slim category" of local law claims that can access federal question jurisdiction must demonstrate that the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 904-05 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 671, 701 (2006) and *Gunn v. Minton*, 568 U.S. 251, 259 (2013)).

Further, because federal courts are courts of limited jurisdiction, "the plaintiff bears the burden of establishing subject matter jurisdiction," and a "court must presume lack of jurisdiction until the plaintiff establishes otherwise." *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, No. CV 18-00046,

2019 WL 4794514, at *3 (D. Guam Sept. 30, 2019), *report and recommendation adopted as modified*, No. CV 18-00046, 2019 WL 5963927 (D. Guam Nov. 13, 2019), *aff'd*, 855 F. App'x 324 (9th Cir. 2021).

Counts III, V, VI, VII, and VIII fail the four-factor examination.

First, no federal issue is "necessarily raised" as to any of these counts. AG Moylan has alleged violations of Guam's Sunshine Reform Act, 5 GCA § 10101, *et seq.* (Count III), GHURA's enabling act, 12 GCA § 5101, *et seq.* (Counts V and VIII), Guam's Open Government Law, 5 GCA § 8101, *et seq.* (Count VI), Guam's General Fiscal Policies and Controls, 5 GCA § 22101, *et seq.* (Count VII). The federal issue AG Moylan asserts is that these alleged violations of Guam law constitute violations of the 2022 Final Rule, which requires that all ARPA projects comply with applicable local law. *E.g.*, Compl., ECF No. 1, at ¶¶ 28-29.

However, none of these claims require resolution of a federal issue. No federal issue is "necessarily raised" to decide these counts. Indeed, though inadequately pleaded, these claims are the types of claims that could have been brought in Guam's Superior Court with or without reference to the alleged federal issue. *Cf. Goffney v. Bank of America NA*, 897 F. Supp. 2d 520, 526 (S.D. Tex. 2012) ("When a claim can be supported by alternative and independent theories of recovery, one based on state law and the other on federal law, that claim may not form the basis for federal question jurisdiction because the federal law is not a 'necessary' element of the claim.").

Second, AG Moylan's supposed federal issue is not "actually disputed." No one contests that ARPA projects are governed by applicable federal and local law.

Third, the federal issue is not "substantial." In this context, a "substantial" issue is one that questions "the interpretation or validity of a federal statute" or "challenges the functioning of a federal agency or program." *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020). Here,

to the contrary, AG Moylan is not challenging the program but is merely alleging local noncompliance with program requirements.

Including an allegation that a federal regulation was violated in a local law claim is not enough to federalize that local law claim. *See, e.g., Cmty. Place v. Mid S. Rehab Servs., Inc.*, 43 F. Supp. 3d 687, 691 (S.D. Miss. 2014) (allegations of noncompliance with Medicare regulations in addition to other breaches of contract are insufficient); *Goffney*, 897 F. Supp. 2d at 527 (absence of a private right of action is "strong evidence" that a claim alleging violations does not create a substantial question of federal law); *Moncure v. Olympus Am., Inc.*, 290 F. Supp. 2d 726, 729 (S.D. Miss. 2003) ("Admittedly, some of plaintiff's claims may overlap with federal law, but proof of a violation of any federal regulation is not a necessary or required element for recovery.")

In *HICA Education Loan Corp. v. Rodriguez*, 31 F. Supp. 3d 351, 352 (D.P.R. 2014), the court dismissed plaintiff's suit for lack of subject matter jurisdiction despite allegations that the defendant's conduct also violated applicable federal regulations. As here, the plaintiff had "bet[] the house" on a transparent ploy to federalize a local law claim, though instead of ARPA funds the issue was alleged nonpayment of a federal loan. The *Rodriguez* court was not swayed by plaintiff's attempt to "couch[] its sole claim not on a breach-of-contract theory under Puerto Rico law, but, rather, on the existence (or not) of a direct cause of action under federal law based on alleged [Health Education Assistance Loan Program] violations." *Id.* at 354. As AG Moylan argues here, the plaintiff in *Rodriguez* argued that a default on the loan was a violation of federal regulations and, therefore, a federal claim. *See id.* The court roundly rejected the ploy, construing the pleading not as a federal claim, but as a local law claim. *Id.* at 355; *see also Bd. of Comm'rs*, 2024 WL 83027, at *3, 5 (allegations that the defendants "violated the ARPA statute and Federal Procurement law" did not convert a local law contract action into a substantial federal question).

14

Fourth, rather than seeking to avoid "disrupting the federal-state balance," AG Moylan is here expressly asking the federal courts to impose themselves on local governance. AG Moylan insists that Guam cannot be currently trusted to govern itself and that federal intervention is necessary to "rebalance the scales of power," "impose" a new separation of powers, and "protect" the island's elected Legislature. *E.g.,* Compl., ECF No. 1, at ¶ 23. However, "the intragovernmental nature of the dispute makes invocation of federal jurisdiction even less appropriate." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1090 (9th Cir. 2002) (citing *Franchise Tax Bd. V. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 (1983)). The federal courts do not need to be dragged into this policy dispute between AG Moylan and the Governor and GHURA. *See Santos*, 2006 WL 581251, *5 ("[T]he Attorney General should not replace the Governor in setting policy whenever he disagrees with the Governor's positions."). As this Court aptly observed in *Santos*, "states have access to their own courts for the enforcement of their laws." *Id.*

Moreover, the lack of a private action under ARPA and similar statutes further weighs against federalizing the claim to the disruption of the federal-state balance. *E.g., Bd. of Comm'rs*, 2024 WL 83027, at *6; *Goffney*, 897 F. Supp. 2d at 527.

### D. The Court should decline to exercise its supplemental jurisdiction.

The Complaint also begs the Court's jurisdiction under 28 U.S.C. § 1367. However, because AG Moylan's putative federal counts fail, the Court should decline the exercise of supplemental jurisdiction.

While 28 U.S.C. § 1367 authorizes the Court to exercise supplemental jurisdiction to take up local law claims once the Court's original jurisdiction has been established, subsection (c) codifies the Court's discretion to decline (1) where the claim raises "novel" or complex issues of

local law, (2) where the local law claims "substantially predominate[]" over the any federal claims, (3) where the Court has dismissed all federal claims, and (4) in other exceptional circumstances. And "'[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining' the exercise of jurisdiction over remaining claims based on local law." *Crawford v. Antonio B. Won Pat Int'l Airport Auth., Guam*, No. CV 15-00001, 2017 WL 3736645, at *10 (D. Guam Aug. 30, 2017), *aff'd in part, appeal dismissed in part*, 917 F.3d 1081 (9th Cir. 2019) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)).

AG Moylan's Guam law claims are not complex, but they are "novel," weighing against the Court's exercise of supplementary jurisdiction. *Cf.* 28 U.S.C. § 1367(c)(1). Counts V and VI, for example, appear to be premised on analyses first offered by his Office in opinions issued a month ago. OAG, "Legal Opinion *[sic]* Hospital Construction & Eminent Domain," REF No. 24-0630 (Dec. 12, 2024); OAG, "Legal Opinion *[sic]* Open Government Law Compliance," REF No. 24-0631 (Dec. 12, 2024).[2] These opinions are untested in the courts of Guam.

Local law substantially predominates in the claims alleged in the Complaint, further weighing against supplemental jurisdiction. *Cf.* 28 U.S.C. § 1367(c)(2). "[C]onsiderations of economy, convenience, fairness, and comity will typically 'favor a decision to relinquish jurisdiction when [local] issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'" *Crawford*, 2017 WL

---

[2] Defendants do not cite these opinions as legal authority but as proof of the opinions' existence. An attorney general's opinion is generally "neither conclusive nor binding" and "where such an opinion is without authoritative legal support, it should not be approved or followed." *See Perry v. Bd. of Cnty. Comm'rs*, 132 P.3d 1279, 1288 (Kan. 2006).

16

3736645, at *10. Here, AG Moylan argues that GHURA exceeded its lawful authority under its enabling act (Counts V and VIII) and did not comply with the Guam Open Government Act (Count VI).[3] AG Moylan argues that the Governor and GHURA failed to comply with Guam's Sunshine Act and Guam's General Fiscal Policies and Controls (Counts III and VII). AG Moylan's two-sentence Count IX merely alleges that roughly two thirds[4] of the preceding paragraphs "identify a variety of violations of Guam law." Compl., ECF No. 1, at ¶ 104. All these claims, to the extent they assert a claim at all, turn on Guam law and "needless decisions of [local] law should be avoided both as a matter of comity and to promote a justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because AG Moylan's putative § 1331 claims fail, supplemental jurisdiction is unwarranted. *Cf.* 28 U.S.C. §1367(c)(3). AG Moylan has likewise failed to allege any appropriate "exceptional circumstances" that warrant this Court indulging his pleading. *Cf.* 28 U.S.C. § 1367(c)(4).

### E. Even were the Court to exercise jurisdiction over AG Moylan's Complaint, the complaint fails to state a claim upon which relief can be granted.

Notwithstanding the jurisdictional flaws in AG Moylan's Complaint noted above, if the Court were to exercise jurisdiction over AG Moylan's Complaint, the Court should dismiss it for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[3] Though AG Moylan alleges in Count VI "GHURA's failure to comply with FOIA," Compl., ECF No. 1, at ¶¶ 85-86, from the context and the count's subtitle it seems reasonably likely he intended to plead noncompliance with the Guam Open Government Act.

[4] AG Moylan may have intended to incorporate the allegations of Counts III through VIII by reference but failed to update the reference after revising some paragraphs. As it stands, paragraph 104 otherwise incorporates an incomplete and apparently haphazard subset of his allegations.

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). As a result, dismissal is appropriate "when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Meeting the Fed. R. Civ. P. 12(b)(6) minimum threshold likewise necessarily requires compliance with the general rules of pleading set forth in Fed. R. Civ. P. 8(a). *See Twombly*, 550 U.S. at 555. However, AG Moylan's counts fail these standards.

### 1. Counts II and IX fail because they do not state a claim.

Count II fails because it does not seek relief and does not state a claim. Count II purports to excerpt or paraphrase the 2022 Final Rule and 2 CFR Part 200 but does not allege any violation of those provisions. It also does not seek any relief. Not only is dismissal required by Federal Rule of Civil Procedure 12(b)(6) but also by Rule 8(a). "The pleading standard under Rule 8 'does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation.'" *Kileleman v. Unpingco*, Civil Case No. 24-000008, 2024 WL 3822849, *5 (D. Guam Aug. 15, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Count II also fails to allege harm. Because Count II fundamentally fails to state a claim, it should be dismissed.

Likewise, Count IX alleges only that a portion of the paragraphs of the Complaint "identify a variety of violations of Guam law." Compl., ECF No. 1, at ¶ 104. Neither the Court nor Defendants are required to scour the Complaint to determine the claims AG Moylan may intend to assert. *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1063 (E.D. Cal. 2009), *overruled in part by Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1180 n.5 (9th Cir. 2016) ("Although the court cannot dismiss a complaint for mere unskillful pleading, the court also cannot

18

endorse an approach that would require defendants to scour the complaint for every passing hint as to possible additional bases for claims."); *see also Portaluppi v. Fortifi Fin., Inc.*, No. 220CV7959ODW(RAOX), 2021 WL 3269978, at *5 (C.D. Cal. July 30, 2021) ("The Court will not scour through Plaintiffs' 185 paragraphs of allegations to piece together the facts needed to support the remaining elements of their RICO claims.").

### 2. Counts III and VII fail because the allegations do not allege facts that plausibly entitle AG Moylan to relief.

Count III fails because its allegations do not allege facts that plausibly give rise to an entitlement to relief considering the Sunshine Act's limitations on disclosure and the flawed Sunshine Act request AG Moylan apparently served to GHURA and attached to his Complaint.

A claim must contain sufficient factual allegations that, if taken as true, state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The two-step analysis is straightforward. First, the Court identifies and disregards conclusory allegations. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Such allegations are not well-pleaded factual allegations and are "not entitled to the assumption of truth." Next, the Court considers the remaining, if any, well-pleaded allegations of fact and determines whether, if assumed to be true, they "plausibly give rise to an entitlement to relief." *Id.* The Court "need not blindly accept… unwarranted deductions of fact, and unreasonable inferences." *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1089 (C.D. Cal. 2017). Throughout this process, the Court remains guided by its "judicial experience and common sense." *Iqbal*, 550 U.S. at 679.

Here, AG Moylan alleges that he served a Sunshine Act request on GHURA and the Office of the Governor, e.g., Compl., ECF No. 1, at ¶ 12, and he attaches a copy of the GHURA request as an exhibit to his Complaint. *See* Compl., ECF No. 1-1. Based on the response he received to

19

those requests, which he alleges did not include loan agreements or information about the specifically identified lot, AG Moylan assumes and asks the Court to infer that no such agreements or documents exist. *See* Compl., ECF No. 1, at ¶ 14. Relying on this thin reed, he alleges a violation of ARPA oversight and procurement, *id.*, ¶¶ 37-38, and unlawful oral contracts, *id.*, ¶¶ 87-94. AG Moylan's allegations are "unwarranted deductions" and "unreasonable inferences."

First, as AG Moylan should know, not all agency documents are disclosable in response to Sunshine Act requests. The Sunshine Act prevents agencies from disclosing privileged or confidential information and draft documents. 5 GCA § 10108(i) and (q). It is therefore unsurprising that documents providing legal advice concerning the legal requirements and the drafts of applicable agreements were not produced in response to a Sunshine Act request. Given those limitations on disclosure, the nondisclosure of those documents does not plausibly plead the nonexistence of those documents.

Second, the plausibility of Counts III and VII is further undercut by AG Moylan's error: he sent a Sunshine Act request for the wrong lot. As was widely reported at the time,[5] and as the AG's Complaint alleges, *see* Compl., ECF No. 1, at ¶ 10, GHURA purchased Lot 5280-3 in the Municipality of Mangilao. The AG's Sunshine Act request asks for information about a different property, *Lot 5260-3*. Compl., ECF No. 1-1, at 1. AG Moylan likely received no documents regarding GHURA purchasing Lot 5260-3 because GHURA was not buying Lot 5260-3. Though AG Moylan was aware of his error at the time he filed his Complaint, in paragraph 12, when AG

---

[5] *See, e.g.,* "GHURA acquires $3.5M property in Pagat area for hospital project," *Pacific Island Times*, Oct. 22, 2024 https://www.pacificislandtimes.com/post/ghura-acquires-3-5m-property-in-pagat-area-for-hospital-project. Defendants request that the Court take judicial notice of this article pursuant to Rule 201 of the Federal Rules of Evidence. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'").

20

Moylan is supposedly quoting his FOIA requests, he deletes the lot number referenced in his requests, Lot 5206-3, and inserts "the vacant lot noted above" apparently referring to paragraph 10 of his Complaint. Paragraph 10 of the Complaint contains the lot number that was actually purchased by GHURA.[6] Once again, given this circumstance, Count III does not state a plausible claim for the nonexistence of the documents.

### 3. Count IV fails because GHURA's acquisition of property for the MMC Project is not subject to the National Environmental Policy Act.

#### a. Relevant Law and Regulations

##### i. The National Environmental Policy Act

The National Environmental Policy Act ("NEPA"), codified at 42 U.S.C. § 4321 *et seq*, prescribes "a set of action-forcing procedures that require that agencies take a hard look at [the] environmental consequences" of their actions. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). NEPA "does not mandate particular results," but rather "prescribes the necessary process" that federal agencies must follow when considering "major Federal actions significantly affecting the quality of the human environment." *Id.* at 348–50. Specifically, NEPA "compels agencies to collect and disseminate information about the environmental consequences of proposed actions that fall under their respective jurisdictions." *Sw. Williamson Cnty. Cmty.*

---

[6] AG Moylan, of course, owes a duty of candor to the Court, as would any lawyer. *See United States v. Smith*, No. CR 17-00020, 2021 WL 5237969, at *9 (D. Guam Nov. 10, 2021) ("As attorneys admitted to practice law in this district court, both Smith and Hiton are officers of the court and owe a duty of candor to the court."); *In re Leon Guerrero*, 2024 Guam 18 para 46 ("It is also well settled that the Attorney General must conform his conduct to that prescribed by the rules of professional ethics."); *People of Guam v. Mallo*, 2008 Guam 23 para 41 n.7 ("Curiously and we will presume, inadvertently, defense counsel in their brief present an excerpt of 9 GCA § 80.50(e) that omits the adjective 'higher.' Regardless, we remind defense counsel that every attorney has an ethical duty of candor to the court." (internal citation omitted)).

*Ass'n, Inc. v. Slater*, 243 F.3d 270, 278 (6th Cir. 2001) (citing *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 371 (1989).

Under NEPA, federal agencies are required to prepare an Environmental Assessment ("EA") or an Environmental Impact Statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS is required to declare adverse environmental effects of proposed actions and alternatives to the proposed action. *Churchill Cnty. v. Norton*, 276 F.3d 1060, 1072 (9th Cir. 2001).

While NEPA does not define the term "major federal action," federal regulations establish that it "encompasses not only actions by the federal government but also actions by nonfederal actors 'with effects that may be major *and which are potentially subject to Federal control and responsibility.*'" *Sierra Club v. Hodel*, 848 F.2d 1068, 1089 (10th Cir. 1988), overruled on other grounds by *Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992) (emphasis in original) (citing 40 CFR § 1508.18) ("Actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies...."). "'Marginal' federal action will not render otherwise local action federal." *Almond Hill Sch. v. U.S. Dep't of Agric.,* 768 F.2d 1030, 1039 (9th Cir.1985).

To determine whether state action may qualify as federal action under NEPA, courts consider (1) the degree to which the given action is funded by the federal agency, and (2) the extent of the federal agency's involvement and control in the action. *Cascadia Wildlands v. United States Dep't of Agric.*, 752 Fed. Appx. 457, 458–60 (9th Cir. 2018). "The question in these cases is whether the federal participation in the project is so substantial that the state should not be allowed to go forward until all the federal approvals have been granted in accordance with NEPA." *Macht v. Skinner*, 916 F.2d 13, 18–19 (D.C. Cir. 1990).

In reviewing the funding factor of the analysis, courts review the contribution of the federal funding provided in relation to the overall project costs. "We generally have been unwilling to impose the NEPA requirements when federal funding falls below ten percent of a state project's total costs." *Cascadia Wildlands*, 752 Fed. Appx. at 458 (finding that federal "marginal" contribution of approximately 8% of total program cost was insufficient to federalize state project where agency lacked actual power to control program); *see also Friends of the Earth, Inc. v. Coleman*, 518 F.2d 323, 329 (9th Cir. 1975) abrogation on other grounds recognized by *Friends of the Columbia Gorge v. Bonneville Power Admin.*, 716 Fed. Appx. 681, 682 (9th Cir. 2018) (finding that a state project did not constitute a federal action where funds amounted to less than 10% of projected total expenditures for the overall project).

As noted, the mere presence of federal financial assistance does not automatically render a state project a federal action under NEPA, particularly where funding is not conditioned on federal review or approval, *see Atlanta Coal.* 599 F.2d at 1347, or where funding supports an aspect of a project that will have no impact on the environment. *See Skinner,* 916 F.2d at 17. Courts have also observed that certain actions by federal agencies do not entail the exercise of significant discretion contemplated in NEPA, including certification and funding apportioned among jurisdictions based on a set computation, and not a specific determination of the agency. *See Atlanta Coal.*, 599 F.2d at 1344-45.

The second factor courts consider in whether state action constitutes federal action under NEPA is whether and the degree to which federal decisionmakers retain "power, authority, or control" over the state project:

> The distinguishing feature of 'federal' involvement is the ability to influence or control the outcome in material respects. The EIS process is supposed to inform the decision-maker. This presupposes he has judgment to exercise.
>
> ....

23

The touchstone of major federal action, in the context of the case before us, is an agency's authority to influence significant nonfederal activity. This influence must be more than the power to give nonbinding advice to the nonfederal actor.... Rather, the federal agency must possess actual power to control the nonfederal activity.

*Vill. of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990).

In *Ka Makani ʻO Kohala Ohana Inc. v. Water Supply,* 295 F.3d 955 (9th Cir. 2002), the Ninth Circuit analyzed whether a transbasin water diversion system project led by the Hawaii Department of Water Supply ("DWS") constituted major federal action of the U.S. Geological Survey ("USGS") and the U.S. Department of Housing and Urban Development ("HUD"). The Court first held that the funding contributed by USGS and HUD, which amounted to less than 2% of the project's overall costs, was not sufficient to alone transform the project into a federal project. *Water Supply*, 295 F.3d at 959–61. The Court further determined that these agencies lacked the degree of control over the project needed to transform the project into a federal action. The Court observed that the USGS was not in a decision-making role for the project, and "the final decision making power remained at all times with the DWS." *Id.* at 961. The Court further noted that HUD's provision of advice and information to DWS regarding its grant application similarly did not constitute discretionary involvement or control over the project. *Id.* On this basis, the Court concluded that the project did not constitute a major federal action triggering NEPA. *Id.*

> ii. **American Rescue Plan Act and amendments, and Treasury Rules**

Congress enacted the American Rescue Plan Act in Public Law No. 117-2 in March 2021. Relevant to this action, ARPA authorized the Treasury Secretary to distribute Coronavirus State and Local Fiscal Recovery Funds ("SLFRF") to states and territories to be used for several enumerated purposes: (1) to respond to the COVID-19 public health and economic impacts

("PHEI"); (2) to provide premium pay to essential workers; (3) to provide government services to the extent of the reduction of revenue the government experienced due to the COVID-19 public health emergency relative to revenues collected in the most recent full fiscal year ("Revenue Loss"); and (4) to make necessary investments in water, sewer, or broadband infrastructure. AMERICAN RESCUE PLAN ACT OF 2021, PL 117-2, March 11, 2021, 135 Stat 4. ARPA further authorized the Secretary of the Treasury to issue regulations to carry out the statute. *Id.*

On May 17, 2021, Treasury issued the 2021 Interim Final Rule, detailing guidelines and restrictions for the use of SLFRF funds. *See* Morris Decl., Ex. A (Coronavirus State and Local Fiscal Recovery Funds, 86 Fed. Reg. 26,786 (May 17, 2021)) ("2021 Interim Final Rule"). Under the PHEI eligible use category, the 2021 Interim Final Rule provides that such eligible uses include "capital investments in public facilities to meet pandemic operational needs, such as physical plant improvements to public hospitals and health clinics or adaptations to public buildings to implement COVID-19 mitigation tactics." *Id.* at 26,788-89. Further, under the Revenue Loss category, which authorizes recipients to use SLFRF funds for the provision of government services to the extent of the revenue reduction experienced due to COVID-19, eligible uses similarly include the provision of health services. *Id.* at 26,801.

Treasury also issued a response to Frequently Asked Questions ("FAQs") to address state and territory concerns regarding the 2021 Interim Final Rule. *See* Morris Decl., Ex. B ("2021 Interim Rules FAQ"). In response to an inquiry asking if NEPA applied to eligible infrastructure projects, Treasury responded, "NEPA does not apply to Treasury's administration of the Funds. Projects supported with payments from the Funds may still be subject to NEPA review if they are also funded by other federal financial assistance programs." *Id.* at 28.

25

On January 27, 2022, Treasury issued the 2022 Final Rule. *See* Morris Decl., Ex. C. While the 2021 Interim Final Rule identified support provided to disproportionately impacted communities, specifically including populations in a qualified census tract or by a Tribal government, as an eligible use, *see* Morris Decl., Ex. A at 26821-22, the 2022 Final Rule noted that "the preexisting health and economic disparities in the territories amplified the impact of the pandemic on these communities," and adopted a presumption that households residing in the U.S. territories or receiving services from these governments were disproportionately impacted households and communities. *See* Morris Decl., Ex. C. at 416 and Ex. D at 19.

The 2022 Final Rule further clarified, in response to inquiries from various states and territories, that under the PHEI eligible use category, recipient governments "can use funds for capital expenditures that support an eligible COVID-19 public health or economic response...recipients may build certain affordable housing, childcare facilities, schools, hospitals, and other projects consistent with final rule requirements," Morris Decl., Ex. C. at 4339, and specifically recognized that, with regard to disproportionately impacted communities, "medical equipment and facilities designed to address disparities in public health outcomes are eligible capital expenditures," including primary care clinics, hospitals, or integrations of health services into other settings. *Id.* at 4372 and Ex. D at 4, 20. Treasury further reiterated that, under the Revenue Loss category, eligible government services included the provision of health services, which included the "construction of schools and hospitals." *See* Morris Decl., Ex. C. at 4408 and Ex. D at 11. Treasury noted that it "does not pre- approve uses of funds; recipients are advised to review the final rule and may pursue eligible projects under it." Morris Decl., Ex. C. at 4340.

Treasury also issued FAQs to address inquiries related to the 2022 Final Rule ("2022 Final Rule FAQs"). *See* Morris Decl., Ex. E (2022 Final Rule FAQs). In these FAQs, Treasury repeats

26

that "[NEPA] does not apply to Treasury's administration of the SLFRF program, although projects supported with SLFRF funds may still be subject to NEPA review if they are also funded by other federal financial assistance programs." *Id.* at 19. The 2022 Final Rule FAQs further provide that recipients are not required to submit proposed expenditures of funds to Treasury for approval. *Id.* at 30.

On December 29, 2022, Congress enacted the Consolidated Appropriations Act, 2023 ("CAA"), Public Law No. 117-328. *See* CONSOLIDATED APPROPRIATIONS ACT, 2023, PL 117-328, December 29, 2022, 136 Stat 4459. While the four eligible uses for SLFRF funds were provided in 42 USC § 803(c)(1), including the PHEI and Revenue Loss categories authorizing the construction of medical facilities such as hospitals, the CAA amended ARPA to add a new provision, Section 803(c)(6), authorizing the use of SLFRF funds for certain infrastructure projects. This provision is colloquially referred to as "ARPA Flex."

ARPA Flex opened new expenditure categories for the use of SLFRF funds that are not required to be related to COVID-19 response or recovery, including spending to provide emergency relief from natural disasters, spending on surface transportation infrastructure projects, and projects that would be eligible under HUD's Community Development Block Grant program ("Title I projects") 42 USC § 803(c)(6). Unlike PHEI and Revenue Loss capital projects, SLFRF funding for Surface Transportation and Title I projects funded by SLFRF were capped at the greater of $10 million or 30% of a grantee's SLFRF allocation. *Id.* Further, unlike projects funded pursuant to Section 803(c)(1), which are not subject to NEPA, ARPA Flex provides that NEPA "shall apply to funds provided under a payment made under this section that are used" for projects authorized under Section 803(c)(6), "[e]xcept as otherwise determined by the Secretary [of the Treasury] or the head of a Federal agency to which the Secretary has delegated

27

authority…" *Id.* Under this section, the Secretary or his delegee has discretion to exempt even Title I projects funded under SLFRF from NEPA requirements.

On September 20, 2023, Treasury issued the 2023 Interim Final Rule to implement ARPA Flex. *See* Morris Decl., Ex. F (Coronavirus State and Local Fiscal Recovery Funds, Rule 88 Fed. Reg. 64986 (Wednesday, September 20, 2023) ("2023 Interim Final Rule"). The 2023 Interim Final Rule confirms that NEPA applies to recipients' use of SLFRF funds for Title I projects, which include the project approval and certification requirements for such projects. *Id.* at 64997. Consistent with caselaw applying NEPA, the rule further observes:

> The application of these approval and certification requirements to SLFRF for these projects is indicated by the statute's specific reference to NEPA. NEPA only applies to federal actions such as a federal agency approval. Without application of the approval requirements of the cross-referenced statutes, there would be no generally applicable federal action associated with the use of SLFRF funds for Surface Transportation projects and Title I projects.

*Id.*

The 2023 Interim Final Rule further acknowledges that certain projects may be eligible both under Section 803(c)(1)'s PHEI and Revenue Loss use categories and under Section 803(c)(6)'s Title I use category, and provides that recipients may elect to proceed under PHEI or Revenue Loss instead of complying with Title I requirements:

> As discussed in the 2022 final rule, various types of activities that are eligible under the CDBG program are also eligible uses of the SLFRF program under the public health and negative economic impacts eligible use category, including homeownership assistance, investing in affordable housing preservation and repairs, and rehabilitation or demolition of blighted or abandoned properties. As noted above, the 2023 CAA did not alter the existing four eligible use categories under the SLFRF program, and the eligible uses articulated in the 2022 final rule in the public health and negative economic impacts eligible use category remain unchanged. As such, recipients wishing to pursue these types of projects with SLFRF funds may want to continue doing so under the public health and negative economic impacts eligible use category rather than complying with the additional requirements of the new Title I projects eligible use category.

28

*Id.* at 65012. Finally, the 2023 Interim Rule reaffirmed that "NEPA does not apply to the other eligible uses in the SLFRF program as described in the 2022 final rule, though recipients that blend SLFRF funds with other Federal funds may be subject to additional requirements associated with the other Federal funds." *Id.* at 64997-98.

### b. GHURA's acquisition of the MMC Property does not trigger NEPA.

Count IV of the Complaint alleges that GHURA "may not obligate funds until project-level approval and certification requirements environment (sic) reviews are satisfied." Compl., ECF No. 1, at ¶44. AG Moylan's allegations betray his lack of understanding regarding the application of NEPA to state action, or the substance of applicable ARPA regulations. GHURA acquired the property for the MMC Project ("MMC Property") under Section 803(c)(1), not under the Title I authorization of Section 803(c)(6). Even if acquisitions were made under Section 803(c)(6), NEPA would not apply because the acquisitions do not transform the MMC Project into a federal action under NEPA.

### i. Acquisition of the MMC Property was made under Section 803(c)(1) of ARPA, and it is therefore not subject to NEPA.

AG Moylan's trepidation regarding the lack of environmental studies on the MMC property appears to stem from his incorrect assumption that the property was acquired under the authorization of SLFRF funding for Title I projects provided in Section 803(c)(6), which, as the Complaint notes, authorizes acquisition of real property for public purposes. *See* Compl., ECF No. 1, at ¶ 42. However, ARPA authorized recipient governments to build hospitals long before ARPA Flex was passed.

Though the 2021 Interim Final Rule issued by Treasury already authorized capital investments in public facilities to meet pandemic operational needs, Morris Decl., Ex. A at 26788-89, the 2022 Final Rule expressly authorized recipients to build hospitals, and specifically

29

authorized governments servicing disproportionately impacted communities, which include territories such as Guam, to pursue capital expenditures to address disparities in public health outcomes. *See* Morris Decl., Ex. C. at 4339 and 4372. Construction of a hospital is further permitted under the more permissive Revenue Loss Category. *See* Morris Decl., Ex. C. at 4408 and Ex. D. at 11. The MMC Project qualifies under both the PHEI and Revenue Loss categories of Section 803(c)(1).

The fact that construction of a hospital may also be an eligible Title I project under Section 803(c)(6) does not automatically drag the project into that category. Rather, the 2023 Interim Final Rule expressly contemplates that where a project would qualify under both Section 803(c)(1) categories such as PHEI and Revenue Loss and Title I authorization under Section 803(c)(6), "recipients wishing to pursue these types of projects with SLFRF funds may want to continue doing so under the [PHEI] eligible use category rather than complying with the additional requirements of the new Title I projects eligible use category." *Id.* at 65012. This provision makes it clear that, to the extent the MMC Project would be eligible under both Sections 803(c)(1) and (6), the recipient may *elect* to proceed with its Section 803(c)(1) category designation to avoid the Title I NEPA requirements.

The MMC Project is not a Title I project, and it has never been designated as a Title I project. It is eligible for continued funding under Section 803(c)(1), where it is not subject to NEPA requirements.

> ii. **Even if the MMC Property were acquired under the Title I authorization of Section 803(c)(6), it would not be required to undergo environmental review because GHURA's actions do not qualify as a major federal action under NEPA.**

Assuming, *arguendo*, that the MMC Property were acquired under Section 803(c)(6), it would still not be subject to the environmental review required by NEPA because the acquisition does not constitute a major federal action within the meaning of NEPA. As discussed, 40 CFR § 1508.18 provides that "Major Federal action includes actions with effects that may be major and which are potentially subject to Federal control and responsibility." To determine whether GHURA's acquisition of the MMC Property constitutes major federal action subject to NEPA, the court must consider (1) the degree to which the acquisition is funded by Treasury; and (2) the extent of Treasury's involvement and control in the acquisition. *See Cascadia Wildlands*, 752 Fed. App'x. at 458–60.

While GHURA's actions seeking to acquire the MMC Property were funded through a loan of $12.5 million in SLFRF funds, this amount constitutes a small fraction of the overall estimated cost of the MMC Project, which preliminary estimates from several years ago place the cost in a range of $743 million, *see* Morris Decl. Ex. G (Excerpt from U.S. Army Corps of Engineers Facilities Condition Assessment) at 28, to $1 billion, *see id.*, Ex. H (Excerpt from Guam Medical Campus Master Plan) at 5-2, significantly less than 2% of either estimate. It can be reasonably anticipated that new estimates will exceed these amounts. This marginal contribution is certainly insufficient to federalize the MMC project. *See Cascadia Wildlands*, 752 Fed. Appx. at 458–60; *Water Supply*, 295 F.3d at 95961.

Additional factors support the position that Treasury's funding of the GHURA acquisition does not federalize the MMC Project. Specifically, Treasury does not pre-approve uses of ARPA funds, *see* Morris Decl., Ex. C. at 4340, and funding is therefore not conditioned on Treasury's approval. *See Atlanta Coal.* 599 F.2d at 1347. Further, Treasury had no discretion in the award of funds to Guam—ARPA required half of the $4.5 billion authorized for the territories to be

31

allocated equally among the territories, and the other half to be allocated based on population. *See* Morris Decl., Ex. I (Coronavirus State and Local Fiscal Recovery Funds Allocations to Territories). This fact demonstrates Treasury's lack of discretion as to the award of ARPA funding. *See Atlanta Coal.*, 599 F.2d at 1344-45.

Importantly, the acquisition of the MMC Property does not itself have any impact on the environment. Federal actions or federally funded state actions that do not impact the environment, including preliminary work and purchase or condemnation of properties, do not trigger NEPA environmental review requirements. *See Skinner,* 916 F.2d at 17 (finding that federal funding for preliminary studies did not impact the environment and did not constitute federal action under NEPA); *cf. City of Crossgate v. U.S. Dep't of Veterans Affairs*, 526 F. Supp. 3d 239, 258–59 (W.D. Ky. 2021) (finding that the NEPA regulation did not apply to the VA's purchase of land because "'simple title transfers' for land acquisition generally do not significantly affect the environment.") (citing *Nat'l Audubon Soc'y v. Dep't of Navy*, 422 F.3d 174, 204, 206 (4th Cir. 2005) (finding that environmental impact does not arise from Navy's title transfer, which "do not include cutting even a single blade of grass in preparation for construction," and ordering that land purchases shall be permitted to proceed.)); *see also United States v. S. Fla. Water Mgmt. Dist.*, 847 F. Supp. 1567, 1580 (S.D. Fla. 1992) (finding that the acquisition of land on which a project is to be constructed does not implicate NEPA's requirements because it is the construction of the federal project "and not the mere acquisition of land, that affect[s] the environment."); *United States v. 0.95 Acres of Land*, 994 F.2d 696, 699 (9th Cir. 1993) ("NEPA cannot be used as a defense to the condemnation action. The filing of the condemnation action and the subsequent transfer of legal title are not major Federal actions significantly affecting the environment.") (citation omitted).

Purchase or condemnation of the MMC Property does not require GHURA to "cut even a single blade of grass." Title transfers have no environmental impact. For this reason, GHURA's acquisition of the MMC Property does not constitute a major Federal action that impacts the environment, and it does not trigger NEPA requirements.

Finally, even if the MMC Project were a Title I project under ARPA Flex, neither Treasury nor any other federal agency has significant control or influence over the MMC Project at this time. Treasury does not approve, control, direct, or in any way bind the Government of Guam's construction of the MMC Project. It has no discretion to exercise that would be informed by an EIS because it has no decision-making authority over the MMC Project. Because Treasury is not in a decision-making role for the MMC Project, the project is not a federal action, and does not trigger NEPA's environmental review requirements. *See Water Supply*, 295 F.3d at 961.

SLFRF Projects under the Section 803(c)(1) PHEI and Revenue Loss categories are simply not subject to NEPA. While a recipient may elect to proceed with a Section 803(c)(1)-qualifying project under Section 803(c)(6)'s Title I authorization, which would subject the project to NEPA requirements, the Government of Guam has not elected to do this, and it continues to pursue the MMC Project under its original Section 803(c)(1) designation as permitted by the 2023 Interim Final Rule. Further, even if the MMC Project were brought under Section 803(c)(6)'s Title I authorization, it would still not constitute a major federal action triggering a NEPA environmental review because Treasury does not exercise meaningful control or influence over the project. Finally, GHURA's acquisition of the MMC Property would also not trigger an environmental review under NEPA because the action has no environmental impact.

For these reasons, the Court should dismiss Count IV of the Complaint.

### 4. Counts V, VI, and VIII fail because Guam law does not impose the requirements alleged in the Complaint.

33

Count V fails because Guam law does not impose the requirements and restrictions to GHURA activities as the Complaint alleges.

Count V opens with the assertion that GHURA may take land to build housing or to fulfill an urban renewal plan. *See* Compl., ECF No. 1, at ¶ 47. This is not what the law says. Title 12 GCA § 5104 (m) allows GHURA to acquire by condemnation any interest in real property which the Authority deems necessary *for or in connection with any project* under this Article. AG Moylan fails to acknowledge that an urban renewal project is a separate type of project from a housing project under GHURA's enabling statute and that a housing project includes much more than simply building houses. Title 12 GCA § 5102(a)(11) defines housing project expansively to include a number of activities beyond building dwellings including the building of health facilities. Title 12 GCA § 5102(a)(12) defines an urban renewal project, which is distinct from a housing project.

The Legislature provided expansive powers to GHURA, commensurate with its broad mandate. First, GHURA is vested with "all the powers necessary and convenient to carry out and perform the purposes and provisions" of Chapter 5, its enabling act, excepting the levying of taxes or assessments. 12 GCA § 5104. The Legislature further vested GHURA with the specific authority to "[a]cquire any real or personal property or any interest or estate therein, by lease, option, purchase, gift, grant, donation, appropriation, bequest, devise or by the exercise of eminent domain or otherwise." 12 GCA § 5104(j). However, if GHURA intends to condemn property, then GHURA must "adopt a resolution finding and declaring that the acquisition of such property is necessary" for its purposes. 12 GCA § 5104(m). GHURA is allowed to exercise this power in any lawful manner, with the limitation that condemnation actions are brought in the name of GHURA and the resulting title vests in GHURA. 12 GCA § 5104(n).

34

This is an exceptionally broad grant of power to permit GHURA to undertake an exceptionally ambitious range of policy. GHURA's scope includes "any other activities designed for the development of communities in Guam, to eliminate and prevent slum and blight, and to assure sound community growth." 12 GCA § 5110(a). By law, GHURA's authority therefore includes "all the powers necessary and convenient to carry out and perform" its purposes, and its purposes include "activities designed for the development of communities in Guam" and to "assure sound community growth."

AG Moylan has cited no law prohibiting GHURA from acquiring Lot 5280-3, or any other lot, in the Municipality of Mangilao. Instead, AG Moylan attempts to impose the statutory requirements for urban renewal projects onto housing projects because it is the only way he can allege GHURA acted without authority. But those requirements do not apply here.

Count VI also fails. AG Moylan claims a violation of a Guam Open Government Act provision, 5 GCA § 8107(d), which requires that "[n]otices must contain the agenda of matters to be discussed at the respective meeting. Agenda items must be in sufficient detail to put the public on notice as to what is to be discussed." AG Moylan's claim appears to be based on his belief that the GHURA Board could not authorize the acceptance of a loan for which the terms were to be negotiated. AG Moylan also claims that the statutory requirements associated with an Urban Renewal Project would also require more information, which he then posits means additional information had to be included in the notice of the meeting. AG Moylan provides no legal or factual support for this proposition.

Guam law does not impose any specific requirements on the GHURA Board regarding the borrowing of money. Title 12 GCA § 5104(f) empowers the Board to "[b]orrow money from any public or private sources … as may be required." The notice for the meetings in question contained

35

all the information required by Guam law. The notice specifically informed the public that the Board was going to consider a resolution to accept a loan for up to $10 Million dollars. This is exactly the action taken by the Board.

Because the Board's notice contained the necessary information under law, under the *Iqbal/Twombly* pleading standard, the Complaint fails to allege well-pleaded allegations of fact regarding the notice that in any way implicates a question of federal law. AG Moylan is asking this Court to rule on what is simply a question of the interpretation of local Guam law. Count VI's allegations are insufficient to state a claim for relief.

Count VIII is premised on a misstatement of local Guam law. As noted, the Guam Legislature has authorized GHURA to construct medical facilities in furtherance of its housing project mandate. The fact that the Guam Economic Development Authority (GEDA) also has authority to issue bonds for the purpose of constructing a public hospital does not eliminate or otherwise affect GHURA's power to construct hospitals. AG Moylan cites no authority to support his claim that GHURA is "stripping" GEDA of its authority under Guam law.

Just as importantly, AG Moylan cites no actual authority that would prohibit GHURA from acquiring property to build a hospital. Given the Legislature's expansive grant of authority to GHURA and the broad responsibilities with which the Legislature has charged GHURA, GHURA's authority to acquire property in furtherance of its housing project authority, including the power to construct hospitals, plainly includes the power to acquire the MMC Property.

//

//

//

//

## III. CONCLUSION

For the foregoing reasons, the Court should strike the Government of Guam as a Plaintiff in this matter and dismiss the Complaint in its entirety.

Respectfully submitted this 13th day of January, 2025.


**OFFICE OF THE GOVERNOR OF GUAM**

*/s/*_____
**DANIEL MORRIS**

**GUAM HOUSING AND URBAN RENEWAL AUTHORITY**

*/s/*_____
**ELISEO M. FLORIG, JR.**