THE DISTRICT COURT OF GUAM

| | |
|---|---|
| GOVERNMENT OF GUAM and DOUGLAS B. MOYLAN, in his official capacity as the Attorney General of Guam,<br><br>Plaintiffs,<br><br>vs.<br><br>LOURDES A. LEON GUERRERO, in her official capacity as the Governor of Guam and GUAM HOUSING AND URBAN RENEWAL AUTHORITY, a Public Body Corporate and Politic,<br><br>Defendants. | CIVIL CASE NO. 24-00029<br><br>**REPORT & RECOMMENDATION**<br><br>1. to Grant Defendants' Motion to Dismiss (ECF No. 5),[1]<br>2. to Deny Plaintiffs' Motion for Leave to File an Amended Complaint (ECF No. 20),<br>3. to Deny Plaintiffs' Motions to Consolidate Cases (ECF Nos. 21 and 35), and<br>4. to Deny Defendants' Motion to Strike as Moot (ECF No. 5) |

This is an action involving the obligation and expenditure of funds allocated by the federal government to the Government of Guam pursuant to the American Rescue Plan Act of 2021 ("ARPA" or the "Act"). The Plaintiffs challenge the Defendants' obligation or use of said funds and contend that the Defendants' actions violate various federal and local laws and regulations, including the Organic Act of Guam ('the "Organic Act").

Now pending before the court are the following motions: (1) Defendants' Joint Motion to Strike and to Dismiss, (2) Plaintiffs' Motion for Leave to File an Amended Complaint, and (3) Plaintiffs' two Motions to Consolidate Cases.[2] *See* ECF Nos. 5, 20, 21 and 35. The motions

---

[1] The ECF citations in this Report and Recommendation refer to the docket sheet in the instant action (24-CV-00029) unless otherwise specified.

[2] Plaintiff Attorney General of Guam (the "Attorney General") requested that the instant action be consolidated with two other cases which he removed to this court. *See Guam Power*

have been referred to the below-signed Magistrate Judge. *See* Order re Referral, ECF No. 39. The motions have been fully briefed, and oral argument will not aid the court in reaching a decision on the pending matters. Having reviewed the case file and based on relevant authority, the court now issues this Report and Recommendation to grant the Defendants' Motion to Dismiss, to deny all of the Plaintiffs' motions, and to deny the Defendants' Motion to Strike as moot.

## I.      BACKGROUND

The facts are generally not disputed.[3] Rather, the issue is whether the Defendants' obligation of ARPA funds toward the Mangilao Medical Campus Project (the "MMC Project") violate the Organic Act, various federal statutes and regulations governing the use of ARPA funds, and other Guam laws.

### A.      ARPA Funds and the SLFRF Program

In March 2021, Congress enacted ARPA to provide additional relief to address the continued impact of the COVID-19 pandemic. Pub. L. 117-2, 135 Stat. 4 (2021). Section 9901 of the ARPA amended Title VI of the Social Security Act to establish the Coronavirus State and Local Fiscal Recovery Funds ("SLFRF") (codified as 42 U.S.C. §§ 802-803) for state, local, territorial and tribal governments to cover pandemic-related costs and losses. Sections 602 and 603 of the Act provided the following list of four permissible uses for SLFRF:

> (A) to respond to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19) or its negative economic impacts, including assistance to households, small businesses, and nonprofits, or aid to impacted industries such as tourism, travel, and hospitality;
> (B) to respond to workers performing essential work during the COVID–19 public health emergency by providing premium pay to eligible workers . . . that are performing such essential work, or by providing grants to eligible employers that have eligible workers who perform essential work;
> (C) for the provision of government services up to [$10 million for] . . . the reduction in revenue . . . due to the COVID–19 public health emergency relative to revenues collected . . . ; or
> (D) to make necessary investments in water, sewer, or broadband infrastructure.

---

*Authority v. Attorney General of Guam*, 25-CV-00029, and *In re: Request of Lourdes A. Leon Guerrero, I Maga 'Hagan Guahan, Governor of Guam, Relative to the Authority of the Attorney General of Guam to Approve Autonomous Agency Contracts*, 25-CV-00041.

[3] *See* Compl. at ¶ 18, ECF No. 1 ("This case . . . presents pure questions of law that do not require any additional factual development.").

42 U.S.C. §§ 802(c)(1) and 803(c)(1).

In January 2022, the U.S. Department of Treasury published a Final Rule, effective April 1, 2022, with regard to SLFRF, requiring that all funds must be obligated by December 31, 2024, and spent by December 31, 2026.  Coronavirus SLFRF, 87 Fed. Reg. 4338, 4340 (Jan. 27, 2022).  The Final Rule also reminded all recipients that "federal, state, and local laws and regulations, outside of SLFRF program requirements, also apply, including for example, environmental laws and federal civil rights and non discrimination requirements[.]"  *Id.*

## B.     Filing of Complaint re Guam's Receipt and Use of SLFRF

Under the ARPA, Guam was allocated approximately $604 million in SLFRF.  Defs.' Joint Opp'n to Pls.' Mot. Leave File Am. Compl. at 1, ECF No. 25.[4]  As of December 20, 2024, the date the Complaint herein was filed, over $450 million in ARPA funds had been obligated.  Mem. P. & A. Supp. Defs.' Joint Mot. Strike and Dismiss at 1, ECF No. 6.

The Complaint asserts that on May 28, 2024, defendant Guam Housing and Urban Renewal Authority ("GHURA") "'accepted' a loan from the Governor [of Guam (the "Governor")] for up to $10 million for 'community development projects[,]'" and an additional $2.5 million on November 26, 2024, for the same purpose.  Compl. at ¶ 7, ECF No. 1.  The Plaintiffs believe that "some or all of this $12.5 million originated from ARPA/SLFRF funds."  *Id.*  The Plaintiffs further believe that GHURA purchased property in Mangilao and will construct a hospital on the land or will transfer the land to another government agency for purposes of constructing a hospital.  *Id.* at ¶¶ 10-11.

The Plaintiffs thus brought the instant action for injunctive and declaratory relief, asserting this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  *Id.* at ¶¶ 1-2.  The Complaint asserts nine causes of action, including violations of the Organic Act, the ARPA/SLFRF and various laws of Guam.  Among other things, the Plaintiffs ask the court for "injunctive relief to prohibit the

---

[4] *See also* Compl. at ¶ 5, ECF No. 1 ("The federal government, pursuant to ARPA, has allocated the Government of Guam over five hundred million dollars ($500,000,000) under SLFRF[.]").

Governor from using any ARPA/SLFRF without appropriation by the Legislature or unless pursuant to a pre-existing program for which the Guam Legislature has already appropriated funds," and to "expressly prohibit GHURA from using or transferring the land it has purchased to date until authorized by the Legislature[.]" *Id.* at 20.

In lieu of filing an answer, on January 13, 2025, the Defendants filed a Joint Motion to Strike and to Dismiss. *See* ECF No. 5.

### C.      Request to File Amended Complaint

On or about December 27, 2024, the Guam Department of Administration ("DOA") entered into an Interagency Grant Agreement ("IGA") with the Guam Economic Development Agency ("GEDA") for the administration and disbursement of approximately $104.8 million in SLFRF. *See* IGA, Ex. 1 to Decl. Leslie A. Travis ("Travis Decl."), ECF No. 25-1. The stated purpose of the IGA was "to fund the completion of the initial phase of the [MMC] project, including design and construction of primary utility infrastructure (electrical power, water and sewer), and completion of sampling and analysis of environmental, archaeological, physical, geology and other site characteristics." *Id.,* Cover Page. In turn, on or about March 2, 2025, and April 1, 2025, GEDA entered into subgrant agreements with the Guam Power Authority ("GPA") and the Guam Waterworks Authority ("GWA"). *See* Travis Decl., Exs. 2 and 3. These agreements were subsequently approved by the Consolidated Commission on Utilities ("CCU"). Joint Opp'n to Pls.' Mot. Leave File Am. Compl. at 2, ECF No. 25.

On January 31, 2025, William Lyle Stamps, Acting Deputy of the Government Corruption Division of the Office of the Attorney General of Guam, wrote a letter to GWA's General Manager stating that the Attorney General had issued two formal legal opinions which concluded that "the Governor's attempt to build a Mangilao medical facility with GHURA violated Guam law." Ex. D to Pet. Writ of Mandate, ECF No. 1-2 in *GPA v. Attorney General of Guam*, 25-CV-00029.[5] The

---

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the court *sua sponte* takes judicial notice of the facts set forth in the filings in 25-CV-00029, which the Attorney General requested be consolidated with the instant action. *See* Att'y General's Mot. Consolidate and Mem. Law, ECF No. 21. The facts contained in said filings are largely undisputed.

letter requested that the GWA General Manager "not take any actions to authorize the expenditure of ratepayer/taxpayer monies in furtherance of [the] Mangilao medical complex" because the "CCU authorization to proceed with expending funds [is] illegal, and is now under criminal investigation." *Id.*

GPA prepared three invitations for bid for the MMC Project, which required the Attorney General's legal advice and review because each procurement exceeded the $500,000 threshold established in Guam Procurement Law, 5 GCA § 5150.[6] *See* Pet. Writ of Mandate at ¶ 12, ECF No. 1-2 in 25-CV-00029. Based on the Attorney General's stated opinion as to the alleged illegality of the MMC Project, on March 7, 2025, GPA wrote to the Attorney General requesting the assignment of conflict-free counsel to conduct the Section 5150 procurement review. *Id.* at ¶ 13.

On March 13, 2025, the Attorney General responded to GPA's letter and asked GPA to produce certain information before he could make a final decision on GPA's request for conflict-free counsel. *Id.* at ¶ 14 and Ex. F thereto.

On March 31, 2025, GPA wrote to the Attorney General, reiterating its request for "independent counsel to conduct a review" of the procurement and "a copy of the documents establishing an ethical screening wall[.]" *Id.* at ¶ 15 and Ex. G thereto. GPA believed that the Attorney General had a "concurrent conflict of interest that prevent[ed him] from working on a potential criminal matter on behalf of the People of Guam against GPA and its officers on the one hand, and representing GPA in the civil matter of [Section 5150] review on the other." Ex. G at 2.

---

[6] In pertinent part, this statute provides:

Whenever . . . the head of any executive branch agency, autonomous agency, instrumentality or public corporation of the government of Guam conducts any solicitation or procurement which is estimated to result in an award of Five Hundred Thousand Dollars ($500,000) or more, the Attorney General or his designees . . . shall act as legal advisor during all phases of the solicitation or procurement process. The Attorney General, or his designee, . . . shall, in addition, when he approves contracts, determine not only the correctness of their form, but their legality.

5 GCA § 5150.

GPA's letter further stated:

> In our request of March 7, 2025, for independent, conflict-free counsel, GPA is not seeking to recuse the entire [Office of the Attorney General] from reviewing the MMC infrastructure procurement. Rather, GPA is asking you to assign your staff in a way that affords GPA independent legal counsel and representation, entirely separate from your proposed prosecution. In other words, GPA is asking you, the Attorney General, specifically, to recuse yourself, based on your statements in the media and letters to GWA officials and testimony before the Legislature, opining that criminal action has taken place or is about to take place regarding the utility infrastructure projects in Mangilao.

*Id.* at 2-3.

On April 9, 2025, the Attorney General replied, informing GPA that it should direct the procurement reviews to the attorneys in the Solicitors Division of his office. *See* Pet. Writ of Mandate at ¶ 16, ECF No. 1-2 in 25-CV-00029, and Ex. H thereto. The letter did not provide documents regarding the establishment of an ethical screening wall as requested by GPA. *Id.*

On April 10, 2025, GPA wrote to the Attorney General, repeating its request for a copy of ethical screening documents. *Id.* at ¶ 17, and Ex. I thereto.

The Attorney General did not respond to GPA's April 10th letter. *Id.* at ¶ 18.

On June 12, 2025, GPA filed a Verified Petition for Writ of Mandate in the Superior Court of Guam (the "GPA Superior Court Action"), requesting said court to compel the Attorney General "to assign conflict-free counsel to GPA's procurement review and to erect an ethical wall in his office screening off all conflicted attorneys, including himself, and provide documentation thereof to . . . GPA[.]" *Id.* at 7.

On June 17, 2025, the Attorney General removed the GPA Superior Court Action to this court. *See* Notice of Removal, ECF No. 1 in 25-CV-00029.

On July 22, 2025, the Plaintiffs filed a Motion for Leave to File an Amended Complaint, with the proposed amended complaint ("PAC") appended thereto.[7] *See* ECF No. 20. The PAC

---

[7] The PAC incorporates by reference a total of nine various exhibits, but the Attorney General failed to include said exhibits when he filed the PAC. *See* PAC, ECF No. 20-1. For example, paragraph 12, footnote 1 asserts that "[a] copy of the Interagency Grant Agreement which contains the certification and costs [sic] estimates is attached hereto as Exhibit 1." *Id.* at ¶ 12, n.1. The PAC further states that "[a] copy of the initial public records request and response is attached as Exhibit 6, with the supplemental response attached as Exhibit 7." *Id.* at ¶ 32. Exhibits 6 and 7,

sought to add GPA, GWA, GEDA and the CCU as defendants in the instant action. The Plaintiffs asserted that the instant lawsuit and the GPA Superior Court Action share "[c]ommon questions of law and fact" such that the new defendants should be added to this action. *Id.* at 2.

## II.      ANALYSIS

The court will address the various motions in the order they were filed.

### A.      Motion to Strike[8]

The Defendants move to strike the Government of Guam as a plaintiff in this action pursuant to Rule 21[9] of the Federal Rules of Civil Procedure. The Defendants assert that the Governor, as the chief executive officer of Guam, holds the executive power of the Government of Guam, not the Attorney General. The Defendants argue that the "Attorney General's authority to direct and control litigation on behalf of the Government of Guam . . . is necessarily limited by the Governor's supreme executive power and duty to ensure faithful execution of the law under the Organic Act." Mem. P. & A. Supp. Defs.' Joint Mot. Strike and Dismiss at 5, ECF No. 6. The Attorney General opposes the motion and maintains that the Government of Guam is properly named as a plaintiff in this action because he has the authority under common law and Guam law to bring this action on behalf of the Government of Guam without the express consent of the Governor.

If joinder is improper, Rule 21 provides that "[o]n motion or on its own, the court may at

however, were not attached to the PAC.

[8] In part II.B. of this Report and Recommendation, the below-signed judge finds that this court lacks subject matter jurisdiction over the action and recommends dismissal pursuant to Rule Rule 12(b)(1). If the Chief Judge agrees with said finding and recommendation, then there is no need to address the merits of the Motion to Strike, and it should be denied as moot.

[9] The Defendants also rely on Rule 12(f) in seeking to strike the Government of Guam as a party. This rule provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Reliance on this rule is misplaced since Rule 12(f) "is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or scandalous matter in any pleading, and is the primary procedure for objecting to an insufficient defense." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed.). The court finds that this rule is not relevant for purposes of striking a misjoined party.

any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Because Rule 21 does not provide any standard for determining whether a party is inappropriately joined, courts often "incorporate standards to be found elsewhere," including Rules 19 and 20. *Pan Am World Airways, Inc. v. U.S. Dist. Ct. for Cent. Dist. Cal.*, 523 F.2d 1073, 1079 (9th Cir. 1975). Rule 19 provides that joinder of a party is required if, among other requirements, (1) "the court cannot accord complete relief among existing parties" without the party's presence, or (2) disposing of the action in the party's absence may "impair or impede the person's ability to protect their interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a). Rule 20 permits persons to join as plaintiffs in a single action if they assert claims arising out of the same occurrence and if those claims share a common question of law or fact. Fed. R. Civ. P. 20(a)(1).

The standards under Rules 19 and 20, however, are not quite applicable to the issue before the court. The court is not being asked to determine whether the Government of Guam's presence as a plaintiff is required or permissive. Rather, the Defendants argue that the Attorney General has no authority, statutory or otherwise, to bring the instant action on behalf of the Government of Guam against the Governor.

The court begins its analysis with a review of the Organic Act, 48 U.S.C. § 1421 *et seq.*, which "serves the function of a constitution for Guam." *Haeuser v. Dep't of L., Gov't of Guam*, 97 F.3d 1152, 1156 (9th Cir. 1996). The Organic Act states that "[t]he government of Guam shall consist of three branches, executive, legislative, and judicial[.]" 48 U.S.C. § 1421a. With regard to the executive branch, the Organic Act provides in relevant part that "[t]he executive power of Guam shall be vested in an executive officer whose official title shall be the 'Governor of Guam'." 48 U.S.C. § 1422. "The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam" and "shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." *Id.*

In contrast, the Organic Act simply states that "[t]he Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." 48 U.S.C. § 1421g(d). Aside from this general

statement and providing options for appointing, electing and removing an Attorney General, however, the Organic Act is silent as to the Attorney General's powers and duties. In *A.B. Won Pat Guam Int'l Airport Auth. ex rel. Bd. of Directors v. Moylan*,[10] the Supreme Court of Guam held that "the Attorney General, as Chief Legal Officer, is charged with all the powers and duties pertaining to the office at common law, except insofar as they have been expressly restricted or modified by statute." 2005 Guam 5, ¶ 67 (Guam Feb. 8, 2005).

Based on a plain reading of the Organic Act, "the Governor is the executive officer of the territory and has authority over the Attorney General." *Santos v. Camacho*, No. 04-CV-00006, 2006 WL 581251, at *5 (D. Guam Mar. 10, 2006).[11] The Governor is vested with the responsibility for the faithful execution of the laws of Guam, so she – not the Attorney General – has the ultimate authority to speak on behalf of and make policy decisions for the Government of Guam. "The Attorney General is [merely] the attorney representing his client, the Government of Guam[;]" he "should not replace the Governor in setting policy whenever he disagrees with the Governor's positions." *Id.* The *Santos* decision is consistent with the Supreme Court of Guam's recent ruling in *In re Leon Guerrero*, 2024 Guam 18 (Guam Dec. 31, 2024), where that court stated that "in the

---

[10] In *Moylan*, the Guam International Airport Authority ("GIAA") executed a legal services contract with a private law firm and sent the contract to the Attorney General for his approval as to legality and form as required under Guam law. 2005 Guam 5, ¶ 2 (Guam Feb. 8, 2005). When the Attorney General refused, GIAA filed a Petition for Writ of Mandamus in the Superior Court of Guam, which was granted by the trial court. *Id.* The appeal followed, and the Supreme Court of Guam held that although the Attorney General was "charged with the common-law powers and duties pertaining to the office," such power and duties are "subject to increase, alteration, or abridgment by the legislature[.]" *Id.* at ¶ 62 (quoting 7 AM. JUR. 2D *Attorney General* § 8 (2004)). Accordingly, the Supreme Court of Guam found that Section 1108(a) and (c) of Title 12, Guam Code Annotated, and Section 30109 of Title 5, Guam Code Annotated, were "valid exercises of the Legislature's power to remove the common law power" of the Attorney General to act as legal counsel for GIAA. *Id.* at ¶ 63.

[11] In *Santos*, a taxpayer brought suit against the then governor of Guam and other government officials concerning Guam's Earned Income Tax Credit ("EIC"). The issue before the court was "whether the Governor of Guam or Guam's Attorney General represents the 'Government of Guam' and which of the two, the Governor or the Attorney General, has final settlement authority" over the matter. *Id.* at *1. The court ultimately found that the Governor had "the final authority to both be the representative of the Government of Guam and to settle the issues involved" with the Guam EIC. *Id.* at *7.

event of a conflict of interest or disagreement over the public interest with a [client] line agency, the Attorney General is required to appoint a special assistant attorney general to represent the agency through his common law power." *Id.* at ¶ 29.

The Attorney General contends that his common law powers and authority provided by Guam law permit him to bring this legal action on behalf of the Government of Guam without the express consent of the Governor. In support of this contention, the Attorney General first cites to Section 30103, which provides in pertinent part that he "shall have . . . those common law powers which include, but are not limited to, the right to bring suit to challenge laws which he believes to be unconstitutional and to bring action on behalf of Guam representing the citizens as a whole for redress of grievances which the citizens individually cannot achieve, unless expressly limited by any law of Guam to the contrary." 5 GCA § 30103.

The Attorney General's reliance on Section 30103 is misplaced. While Guam law recognizes the Attorney General's power to bring an action *on behalf of Guam representing the citizens as a whole*, Section 30103 does not expressly authorize suit on behalf of the *Government of Guam.* This conclusion is consistent with the ruling in *Santos,* where the court recognized the distinction between "representing the 'Government' as a distinct legal entity and interest" versus "representing the people of Guam or a generalized 'public' interest." *Santos*, 2006 WL 581251, at *5. Section 30103 permits the Attorney General to sue on behalf of a generalized public interest, not on behalf of the Government of Guam.

The Attorney General next cites to the case of *State of Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266 (5th Cir. 1976), to support his argument that he has the common law power to bring an action on behalf of the Government of Guam. In that case, the state attorney general initiated an antitrust action against major oil companies to recover damages sustained by departments, agencies, and political subdivisions of the state which had not affirmatively authorized the suit. *Id.* at 267. The district court dismissed the action as beyond the attorney general's authority, but the Fifth Circuit determined that the attorney general retained his common law powers to initiate "suits under federal law without specific authorization of the individual government entities who allegedly have sustained the legal injuries asserted." *Id.* at 274.

As noted by the Defendants, however, *Shevin* is distinguishable from the case at bar. That case involved a lawsuit initiated by the state attorney general against third parties where the interests of the attorney general and the executive branch agencies were aligned. *Id.* at 273 ("[T]here is no evidence in the record before us of any objection on the part of the government bodies which allegedly have been injured by the defendants' business practices."). Here, however, the Attorney General brought the instant action against the Governor of Guam on behalf of the Government of Guam, over which she is vested with the power to control and supervise all executive branch agencies, departments and instrumentalities. More importantly, the Governor objects to the Attorney General's actions and the legal position he has taken in this litigation purportedly on behalf of the Government of Guam. Thus, the court finds that the *Shevin* decision does not bolster the Attorney General's assertion that he may bring suit on behalf of the Government of Guam even when the Governor does not consent to such action.

Finally, the Attorney General relies on *Att'y Gen. of Guam v. Gutierrez*, 2011 Guam 10.[12] There, the Supreme Court of Guam stated that "[s]ince the [Attorney General] pursuant to its common law powers may institute, conduct and maintain prosecution to protect public interests, it has standing to bring this suit to enforce proper spending by officers or employees of the Executive Branch of the Government of Guam." *Id.* at ¶ 40. The court notes, however, that while the Attorney General brought that action for the return of public money, he did so in his own name; the Government of Guam was not a party to that enforcement action.

This court recognizes that the Attorney General, as the Chief Legal Officer for the Government of Guam, has common law powers that include initiating action on behalf of the people and the public's interest as provided for under Section 30103. Nonetheless, the Governor is vested

---

[12] In *Gutierrez*, the Attorney General filed an action pursuant to the Enforcement of Proper Government Spending Act, 5 GCA § 7101 *et seq.*, against the former governor, an Executive Branch employee and others involved in the settlement of a purported claim against the Guam Memorial Hospital Authority. 2011 Guam 10 ¶¶ 1, 4-11. After dismissing the claims against most of the defendants, the trial court found that the two remaining defendants violated their fiduciary duties as officers or employees of the Executive Branch and spent money without proper authority under Guam law, and the defendants appealed, arguing, among other things, that the Attorney General did not have standing to file the lawsuit under Guam law. *Id.* at ¶¶ 13-15, 19.

with ultimate responsibility for overseeing the executive branch and the responsibility for the faithful execution of the laws of Guam and federal laws applicable to Guam. Accordingly, the Governor holds the supreme executive power for the Government of Guam, and in the event of a conflict or disagreement with the Attorney General over the Government of Guam's interest, the Attorney General must yield control over litigation involving the Government of Guam to the Governor. Having reviewed the parties' argument and relevant authority, the below-signed judge recommends that the court grant the Defendant's Motion to Strike the Government of Guam as a plaintiff in this action.[13]

### B. Motion to Dismiss

The next motion before the court is the Defendants' Motion to Dismiss this action. The Defendants argue that dismissal is warranted under Rule 12(b)(1) because this court lacks subject matter jurisdiction. Additionally, the Defendants seek dismissal pursuant to Rule 12(b)(6), asserting that the various counts in the Complaint fail to state a claim upon which relief can be granted. Because the court has an obligation to assure itself of its jurisdiction, the court will first address dismissal under Rule 12(b)(1) before addressing the merits of the Defendants' request for dismissal under Rule 12(b)(6).

#### 1. Federal Subject Matter Jurisdiction

Under Rule 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A court must presume lack of jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994).

Here, the Complaint asserts that this court has jurisdiction "pursuant to 218 U.S.C.[] §§ 1331 and 1367." Compl. at ¶ 2, ECF No. 1. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties

---

[13] If the Chief Judge agrees with the Report and Recommendation's finding that this court lacks subject matter jurisdiction as discussed *infra*, then there is no need to address the merits of the Motion to Strike, which should then be deemed moot.

of the United States." 28 U.S.C. § 1331. A case "arises under" federal law either where federal law creates the cause of action or where plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006). The supplemental jurisdiction statute provides in pertinent part that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Supplemental jurisdiction cannot exist without original jurisdiction. *Herman Family Revocable Tr. v. Teddy Bear*, 254 F .3d 802, 805 (9th Cir. 2001).

Thus, in order to determine whether there is federal question jurisdiction, the court must examine the Complaint to determine whether "federal law creates the cause[s] of action" asserted or whether the Attorney General's "right to relief necessarily depends on the resolution of a substantial question of federal law."

### 2. Count I - Alleged Violation of Organic Act

Count I of the Complaint purports to allege a violation of the Organic Act. Count I asserts that "the Governor will continue to unlawfully spend funds form the ARPA/SLFRF account in violation of the separation of powers doctrine enshrined in the Congressionally-adopted Organic Act in violation of the Legislature's power to appropriate public money granted to the state by the federal government." Compl. at ¶ 17, ECF No. 1. The Complaint alleges "the Governor has exercised the Legislature's appropriation authority unlawfully with respect to these ARPA funds, and that the Governor will continue to do so unless enjoined by this court." *Id.* at ¶ 20. Count I asks the court to resolve "the fundamental question as to whether the Governor has the power and and authority to ignore the express requirements of the Organic Act." *Id.*

In asserting that Count I fails to raise a federal question, the Defendants rely on this court's decision in *L. Offs. of Phillips & Bordallo, P.C. v. Leon Guerrero*, No. 22-CV-0020, 2023 WL 5075374 (D. Guam Aug. 9, 2023), where the court examined whether references to specific provisions of the Organic Act in a petition formed the basis for federal question jurisdiction. In discussing federal question jurisdiction, this court stated:

Congress passed the Organic Act of Guam pursuant to the second clause of Article IV, Section 3 of the Constitution, which is known as "the Territorial Clause." In determining whether laws passed by Congress pursuant to the Territorial Clause are laws "of the United States," courts have taken different approaches. The Supreme Court of the Virgin Islands found that the Bill of Rights of its respective Organic Act was not a law "of the United States" because it was enacted pursuant to Article IV instead of Article I of the Constitution.

> [I]t is well-established in the precedents of the Supreme Court of the United States and the federal courts of appeal that whether Congress enacts legislation pursuant to its Article I or Article IV powers is of important constitutional significance, for while laws enacted by Congress in its capacity as a national legislature pursuant to its Article I powers are considered "laws of the United States," laws enacted by Congress through invocation of its Article IV powers are not, but rather serve as laws of the territory, with Congress standing in place of a state government.

*Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1071-72 (V.I. 2019). The Supreme Court of the Virgin Islands explained further, "The Bill of Rights provisions in the Revised Organic Act are local law rather than federal law, in that though enacted by Congress, the protections apply only within the borders of the Virgin Islands and were never designed to have general protection throughout the United States." *Id.* at 1090.

When Hawaii was still a territory and governed by its own Organic Act, the federal district court for Hawaii found that a section of its Organic Act was not a law "of the United States" because it concerned local policy and because it did not concern "fundamental rights[.]"

. . .

The cases agree that laws concerning local policy are not laws "of the United States."

*Phillips & Bordallo,* 2023 WL 5075374, at *4.

"[T]he Organic Act of Guam is a federal statute concerning *only* Guam." *Guam Soc. of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422, 1427 (D. Guam 1990) (emphasis in original), *aff'd*, 962 F.2d 1366 (9th Cir. 1992), as amended (June 8, 1992), *cert. denied,* 506 U.S. 1011 (1992). Thus, although the Organic Act was passed by Congress, a provision of the Organic Act which addresses a matter of purely local concern will be construed as local law and not a law "of the United States" that would give rise to federal question jurisdiction. *Phillips & Bordallo,* 2023 WL 5075374, at *4-5.

Here, the Defendants argue that the Organic Act's "provisions relating to local appropriations are matters of local concern[.]" Mem. P. & A. Supp. Defs.' Joint Mot. Strike and Dismiss at 8, ECF No. 6. The court concurs. The specific provision of the Organic Act at issue here provides: "Appropriations, except as otherwise provided in this chapter, and except such

appropriations as shall be made from time to time by the Congress of the United States, shall be made by the legislature." 48 U.S.C. § 1423j(a). Whether the Governor violated this provision by expending funds without the Guam Legislature first appropriating said funds is a matter of purely local concern. Because Section 1423j(a) does not have general application throughout the United States and concerns a matter of local policy, the court finds that this specific provision of the Organic Act is not a law "of the United States" and cannot form the basis for federal question jurisdiction.

The court notes that the Attorney General's Opposition[14] fails to address the Defendants' argument that Count I does not arise under federal law. The Attorney General never even discusses the *Phillips & Bordallo* case. Based on his failure to address the argument, the court concludes that the Attorney General has conceded this issue. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) ("But the plaintiffs did not raise that argument to the district court in their ... opposition to the defendants' motion for summary judgment, so the argument was waived."); *In re Point Ctr. Fin., Inc.*, No. SACV 16-1336 DSF, 2016 WL 11723668, at *2 n.1 (C.D. Cal. Aug. 30, 2016) ("A party can waive an argument by failing to raise it in their opposition to a motion to dismiss."). Accordingly, the court finds that Count I fails to assert a claim that arises under federal law.[15]

---

[14] *See* Pls.' Mem. P. & A. Supp. of Resp. to Joint Mot. Strike and Dismiss, ECF No. 17. This document shall be referred to as the "Attorney General's Opposition."

[15] If the Chief Judge finds that Count I arises under federal law, the below-signed judge would nonetheless find that dismissal is warranted under Rule 12(b)(6) for failure to state a claim. "Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (internal citations omitted). Here, the ARPA funds at issue were funds from the U.S. Treasury given to Guam through an appropriation of Congress for a specific purpose. "Where these appropriations or grants completely fund a specific purpose without the need for local funding, and where the appropriation or grant does not provide for local legislative control, there is no authority for the Guam Legislature to assume the responsibility for reappropriating these funds." *Wong v. Camina*, 2 Guam R. 132, 133 (D. Guam 1978). *See also Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶ 46 ("The CARES Act funding was a federal appropriation for a specific purpose, outside the control of the Guam Legislature."). Additionally, the Attorney General's Opposition fails to address this argument, and

### 3. Count II - Alleged Violation of ARPA

The subheading of Count II of the Complaint alleges a "[v]iolation of ARPA/SLFRF." Compl. at 7, ECF No. 1. But aside from quoting and referencing various regulations and requirements, Count II does not contain any new factual allegations,[16] nor does it set forth any claim for relief. Nevertheless, the Defendants seek dismissal of Count II and argue that ARPA does not confer the Attorney General with a private right of action. Mem. P. & A. Supp. Defs.' Joint Mot. Strike and Dismiss at 11-12, ECF No. 6.

Essentially, the Defendants are arguing that the Attorney General lacks standing to assert a claim under ARPA. The Ninth Circuit has held that a lack of *statutory* standing requires dismissal for failure to state a claim under Rule 12(b)(6), but a lack of Article III standing requires dismissal for lack of subject matter jurisdiction Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

With regard to statutory standing, the Defendants have cited to a number of decisions throughout the country which found that ARPA does not confer a private right of action. *See* Mem. P. & A. Supp. Defs.' Joint Mot. Strike and Dismiss at 11-12, ECF No. 6. The Ninth Circuit has not directly addressed the issue, but the District of Oregon has stated that "ARPA does not provide a private right of action." *Johnson v. HAF*, No. 6:24-CV-01141-AA, 2024 WL 4057520, at *4 (D. Or. Sept. 5, 2024) (citing *Yaritz v. Internal Revenue Service*, Case No. 23-cv-452 (PJS/LIB), 2023 WL 5756462, at *3 (D. Minn. April 26, 2023) ("[F]ederal district courts have interpreted that neither the CARES Act, nor the CAA, nor the ARPA as providing for a private right of action." (collecting cases))). The Attorney General fails to address this argument in his Opposition, and similar to the other issues which he failed to address, the court deems this issue to be waived. The court finds that the Attorney General has failed to provide this court with any authority that ARPA provides him with a private right of action. Accordingly, the court finds that the Attorney General

thus the court deems he has waived the issue. Accordingly, there can be no violation of the Organic Act of Guam as alleged in Count I.

[16] Paragraph 25 in Count II simply "re-allege[s] and incorporate[s]" paragraphs 1-24 of the Complaint. Compl. at ¶ 25, ECF No. 1.

lacks statutory standing to pursue Count II.

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Communications Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008).  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A failure to meet any one of these three criteria constitutes a lack of Article III standing and requires dismissal for lack of subject matter jurisdiction.  *Maya*, 658 F.3d at 1067.

The court first examines whether the Attorney General has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent."  *Friends of Earth*, 528 U.S. 180.  With regard to this issue, Supreme Court cases "have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  The Supreme Court has "held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Here, the Attorney General asserts that he is bringing

> a pre-enforcement challenge against the Governor and GHURA for their failure to properly meet the requirements for the use of ARPA funds.  Defendants' failure to meet those requirements put the Government of Guam at significant risk of an enforcement action by the Federal Government for recoupment of ARPA funds inappropriately appropriated and spent by Defendants.

Att'y General's Opp'n at 11-12,[17] ECF No. 17.

---

[17]  The internal page numbers in the Attorney General's Opposition were positioned so low on the page that they were obscured by the CM/ECF-generated footer.  The corresponding pages

The court finds that the Attorney General fails to satisfy the requirements to bring a pre-enforcement challenge. First, the Attorney General has not alleged that *he* "intends to engage in a course of conduct arguably affected with a constitutional interest." *Susan B. Anthony List*, 573 U.S. at 161. Rather, he alleges that the *Defendants* have used and intend to use ARPA funds for the purpose of purchasing land and building a hospital. *See* Compl. at ¶¶ 5-11, ECF No. 1, and Att'y General's Opp'n at 12, ECF No. 17. The Attorney General challenges the Defendants' course of conduct – not his own intended future actions – as being in violation of the Organic Act, ARPA and Guam laws. Accordingly, the Attorney General fails to satisfy the first requirement for a pre-enforcement challenge.

The second requirement for a pre-enforcement challenge is for a plaintiff to show that his intended future conduct is "arguably . . . proscribed by [the] statute" he intends to challenge. *Babbitt*, 442 U.S. at 298. The Attorney General fails to satisfy this requirement. Again, he is not challenging ARPA as applied to him or alleging that ARPA somehow impinges on his constitutional rights. Instead, the Attorney General asserts that the *Defendants'* use of funds received through ARPA or the SLFRF program is proscribed by federal statutes and/or regulations and that such actions by the *Defendants* may lead to enforcement actions by the U.S. Department of Treasury. Even if the court were to accept as true the allegations in the Complaint, the court is having difficulty concluding that the Complaint alleges the existence of any statute that proscribes the Attorney General's conduct or intended future conduct. Accordingly, the court finds that the Attorney General failed to satisfy the second requirement for a pre-enforcement challenge.

Finally, the third requirement for a pre-enforcement challenge requires the plaintiff to establish that "the threat of future enforcement of the . . . [proscribed] statute is substantial." *Susan B. Anthony List*, 573 U.S. at 164. Here, the Complaint fails to allege that the Defendants have threatened to prosecute or bring an enforcement action against the Attorney General. The U.S. Department of Treasury is vested with enforcing compliance with ARPA and its ensuing regulations – not the Attorney General. Accordingly, the Attorney General has failed to establish the third

on the CM/ECF footer are pages 16-17.

element for a pre-enforcement challenge.

The court finds that the Attorney General has failed to satisfy the injury-in-fact requirement for Article III standing, and the court need not address the remaining two elements. A failure to meet any one of the three criteria constitutes a lack of Article III standing and requires dismissal for lack of subject matter jurisdiction. *Maya*, 658 F.3d at 1067. Assuming that Count II alleges a violation of ARPA, a federal law, the court nonetheless finds that the Attorney General has failed to establish that he has Article III standing to bring the purported pre-enforcement challenge. Accordingly, the court recommends that Count II be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

4. Counts III-VIII - Alleged Violations of ARPA and Guam Laws

In Counts III through VIII of the Complaint, the Attorney General alleges the Defendants violated ARPA by failing to maintain required records, by failing to do an environmental assessment, and by failing to comply with various local laws (*i.e.*, Guam law with regard to condemnation of property, the Open Government Law, Guam contract law and GHURA's enabling statute). However, as discussed above in Count II, the Attorney General lacks Article III standing to bring this pre-enforcement challenge and further lacks statutory standing because ARPA does not provide him with a private right of action. Accordingly, to the extent that these causes of action arise under federal law, they should nonetheless be dismissed for lack of subject matter jurisdiction based on the Attorney General's lack of standing.

Furthermore, Counts III through VIII only make passing and vague references to ARPA's provisions, however the gravamen of the allegations in Counts V through VIII are the purported violations of Guam law. As this court noted in *Phillips and Bordallo*,

> "[S]tate law claims cannot be alchemized into federal causes of action by incidental reference" to federal law. *Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (citing *Easton v. Crossland Mortgage Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) (explaining that "the mere reference of a federal statute in a pleading will not convert a state law claim into a federal cause of action if the federal statute is not a necessary element of the state law claim and no preemption exists.")).

2003 WL 5075374, at *9.

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily

raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Jurisdiction is proper "[w]here all four of these requirements are met" because in such a case, "there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313 (2005).

In essence, in Counts V through VIII, the Attorney General argues that the violations of Guam's laws also constitute a violation of the 2022 Final Rule, which requires compliance with local laws and regulations. However, resolution of these claims does not necessarily implicate a federal issue nor is the federal issue "substantial." The application and interpretation of local law substantially predominates the claims in the Complaint. These challenges to Guam law are more appropriately addressed in the Superior Court of Guam because these causes of action address matters of purely local concern. The court finds that Counts V through VIII do not arise under federal law so as to provide this court with federal question jurisdiction.

### 5. Count IX - Alleged Violation of Guam Law

Finally, Count IX of the Complaint simply incorporates the previous allegations in the Complaint and asserts the "variety of violations of Guam law . . . invalidate the actions of the Governor and GHURA." Compl. at ¶¶ 103-104, ECF No. 1. This cause of action is clearly brought under Guam law.

Based on the analysis above, the Attorney General has failed to sustain his burden of showing this court has federal question jurisdiction over Counts I through VIII. Without original jurisdiction under Section 1331, this court cannot exercise supplemental jurisdiction over Count IX or any of the other related counts that arise under Guam law. *Herman Family Revocable Tr.*, 254 F.3d at 805 ("The statute's plain language makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it.").

To the extent that any claims in the Complaint arise under federal law so as to bestow this court with original jurisdiction, the court would nonetheless recommend that the Chief Judge not

exercise supplemental jurisdiction over any of the causes of action that allege violations of Guam law. Pursuant to Section 1367(c),

> district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>> (1) the claim raises a novel or complex issue of State law,
>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1) and (3).

Here, the court has recommended dismissal of Counts I through IV – the only causes of action that could possibly confer this court with subject matter jurisdiction – so the court should decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. §1367(c)(3). Additionally, the challenges to Guam law, particularly with regard to Guam's land condemnation procedures and GHURA's authority to condemn private property for the MMC Project raise novel issues of local law, and the local courts of Guam are best-placed to address these statutory issues dealing with matters of purely local concern. 28 U.S.C. §1367(c)(1). Finally, as discussed above, the application and interpretation of local law substantially predominate the claims in the Complaint, 28 U.S.C. § 1367(c)(2), such that this court should decline to exercise supplemental jurisdiction over Count IX or any of the other related counts that arise under Guam law.

In conclusion, because this court lacks subject matter jurisdiction either because the causes of action do not arise under federal law or because the Attorney General lacks standing to bring said claims, the below-signed judge recommends that Motion to Dismiss be granted pursuant to Rule 12(b)(1).[18]

**C.     Motion for Leave to Amend Complaint**

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Attorney General seeks leave to file the PAC, adding GPA, GWA, GEDA and the CCU as defendants in the instant

---

[18] Because the below signed judge recommends dismissal under Rule 12(b)(1), there is no need to address the merits of the Defendants' remaining arguments for dismissal under Rule 12(b)(6).

action and purportedly bolstering the basis for federal question jurisdiction. Under Rule 15(a)(2)'s liberal standard, a district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court, however, need not grant such leave where the amendment: (1) unduly prejudices the opposing party; (2) is sought in bad faith; (3) produces undue delay in litigation; or (4) is futile. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989)).

Here, Defendants object to the PAC and assert that amendment should be denied for futility. An amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cty*, 119 F.3d 1385, 1393 (9th Cir. 1997)). The standard for assessing whether a proposed amendment is futile is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988),[19] *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (explaining that a motion for leave is futile where the proposed facts to be included in a pleading would not constitute a valid and sufficient claim or defense).

Thus, the court must examine each cause of action in the PAC to determine whether the alleged claim is futile.

### 1.  PAC Count I - Alleged Violation of Organic Act

Count I of the PAC is similar to Count I of the original Complaint and essentially realleges that the Governor (and those acting in concert with her) violated the Organic Act by encumbering or committing ARPA funds for the MMC Project without an appropriation from the Guam Legislature. Paragraph 56 in the PAC is new and asserts that the approximate $100 million in ARPA funds "is not sufficient to build the MMC" project and that the Governor "is not legally allowed to bind any future Governor or the People of Guam to a potential billion-dollar expenditure

---

[19] The *Miller* case cites to 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)). *Miller*, 845 F.2d at 214.

without express and explicit legislative approval and appropriation." PAC at ¶ 56, ECF No. 20-1. The paragraph further cites a Supreme Court of Guam case, *Pangelinan v. Gutierrez,* 2003 Guam 13,[20] to support the assertion that the Governor must obtain legislative approval and appropriation. *Id.*

The addition of this new paragraph does not cure the infirmities discussed *supra*. As pled, Count II of the PAC still only involves a matter of local concern or policy and does not allege a cause of action that arises under federal law. Thus, Count I of the PAC does not confer this court with federal question jurisdiction.

2. PAC Count II- Alleged Violation of ARPA/SLFRF

Count II of the PAC is basically identical to the original Count II but with the addition of three new paragraphs. *See* PAC at ¶¶ 71-73, ECF No. 20-1. Most notably, paragraph 71 refers to and quotes from a notice published by the U.S. Department of Treasury on March 25, 2025, informing recipients of SLFRF awards that the agency "is committed to recouping funds that recipient obligated or expended impermissibly, as well as to recapturing funds that they did not obligate by the deadline." PAC at ¶ 71, ECF No. 20-1. The notice further asserts that the U.S. Department of Treasury will "follow standard debt collection policy and procedures" if the recipient does not repay the amount owed by a specified date, with interest and penalties to accrue. *Id.* Count II of the PAC further alleges that the IGA between DOA and GEDA requires compliance with federal and local laws and that "GHURA violated several local laws, which in turn are violations of ARPA and SLFRF." *Id.* at ¶¶ 72-73.

These three additional paragraphs will not cure the defects discussed above with regard to Count II of the original Complaint. The Attorney General still has not cited to any authority that provides him with a private right of action under ARPA. Proposed Count II still fails to state a claim under federal law and does not seek any relief. More importantly, Count II of the PAC fails

---

[20] In this case, the Supreme Court of Guam found that a contract entered into by the then governor violated the Organic Act, 48 U.S.C. § 1423j, and Guam law (5 GCA § 22401). *Pangelinan v. Gutierrez*, 2003 Guam 13, ¶ 1 (Guam June 27, 2003), *opinion vacated in part on reh'g*, 2004 Guam 16 (Guam Sept. 9, 2004).

to establish the necessary elements for Article III standing. Thus, amended Count II would still be subject to dismissal as discussed *supra*.

### 3. PAC Count III - Alleged Violation of ARPA/SLFRF

Proposed Count III is identical to Count III in the Complaint. Proposed Count III still only makes passing and vague references to records compliance provisions of ARPA as "required by Title 2 of the Code of Federal Regulations." PAC at ¶ 75, ECF No. 20-1. For the same reasons discussed above, the Attorney General lacks statutory and Article III standing to assert a cause of action under ARPA, and Count III, as pled, is subject to dismissal.

### 4. PAC Count IV- Alleged Violation of ARPA/SLFRF

Count IV in the PAC mirrors the original Count IV but adds a new paragraph alleging that "the Governor and the conspirator defendants knew or should have known of the environmental requirements to proceed with the MMC" as evidenced by the inclusion of almost $5.5 million in "civil engineering" costs for environmental studies and review contained in the IGA. PAC at ¶ 84, ECF No. 20-1.

But as already discussed, proposed Count IV fails for the same reasons set forth *supra* with regard to the original Count IV. Despite the proposed amendment, the Attorney General still lacks statutory and Article III standing to assert a cause of action under ARPA, and Count III is subject to dismissal for lack of subject matter jurisdiction.

### 5. PAC Count V- Alleged Violation of ARPA/SLFRF and HCDA

Count V of the PAC is a new cause of action. Therein, the Attorney General asserts that GHURA has failed to provide him with any records to ensure that it is compliant with ARPA and the Housing and Community Development Act of 1974 (the "HCDA"). PAC at ¶ 86, ECF No. 20-1. Proposed Count V further alleges that "Title I projects are required to supplement and not support other . . . government funds," and because the Governor has not sought "an appropriation from the Guam Legislature" to fund the MMC Project, said project is one that is "wholly funded by the U.S. Government thereby violating the supplement and not supplant requirements for Title I projects." *Id.* at ¶¶ 87-90.

///

Even if the court accepted these assertions as true,[21] the Attorney General still has not shown that he has standing to enforce any alleged violation of ARPA, as discussed previously by the court, or the HCDA.  Federal law provides that in the event the Secretary of the Department of Housing and Urban Development ("HUD") "finds . . . that a recipient of assistance . . . has failed to comply substantially with any provision [of the community development program]," the Secretary has the option of terminating, reducing or limiting payments to the recipient. 42 U.S.C. § 5311(a).  The law further provides that the Secretary of HUD may "refer the matter to the Attorney General *of the United States* with a recommendation that an appropriate civil action be instituted."  42 U.S.C. § 5311(b)(1) (emphasis added).  Based on a plain reading of the statute, the Attorney General is not authorized to bring an enforcement action on behalf of HUD against the Defendants.  The Attorney General failed to address the issue of lack of standing under the HCDA in his Reply to the Defendants' opposition, and thus the issue is waived.[22]

Because the Attorney General lacks standing, this court lacks subject matter jurisdiction over the claim and proposed Count V would be subject to dismissal.

### 6.  PAC Count VI- Alleged Violation of ARPA and Guam Law

Proposed Count VI is similar to Count V of the Complaint, but Proposed Count VI includes additional paragraphs alleging among other things that (1) the MMC Project "does not qualify as a 'housing project'" under Guam law, (2) Guam law requires GHURA to submit a report of suitable housing projects to the Guam Legislature, (3) while the Guam Legislature passed a law for the

---

[21]  The Defendants contest these allegations and further argue that the claim is not ripe for review.  There is no need to address these arguments since the court finds that the Attorney General lacks standing to bring this claim.

[22]  The Attorney General complains that he "did not have an adequate opportunity to respond" to the arguments raised in the Defendants' opposition to his Motion for Leave to File an Amended Complaint because the court denied his request for a two-week extension to file his reply.  *See* Att'y General's Reply to Defs.' Opp'n to Mot. Leave to File Am. Compl. at 4, ECF No. 32 (the "Attorney General's Reply").  The court finds no merit to this argument.  Many of the arguments raised in the Defendants' opposition to the Motion for Leave to File an Amended Complaint simply incorporated by reference their prior arguments raised in the Motion to Dismiss. Thus, the Attorney General was well aware of the bases for the Defendants' objections to his asserted claims.  Despite this, the Attorney General's Reply failed to address the issue of standing.

building of a new hospital, said law "[did] not plan or provide for any condemnation or development by GHURA" but instead provided "for the leasing of land and development of land for the public hospital," and (4) GHURA exceed its statutory authority under Guam law to condemn property for the MMC Project. PAC at ¶¶ 101-110, ECF No. 20-1.

Based on a plain reading of proposed Count VI, the Attorney General asserts that GHURA's alleged violations of various Guam laws also form the basis for an ARPA violation because ARPA requires that recipients comply with local laws. But as was already discussed above, ARPA does not create a private right of action, and the Attorney General has no standing to enforce any alleged violation of ARPA. Even if the Attorney General were to overcome the standing issue, proposed Count VI still does not arise under federal law, and the scant reference to ARPA in proposed Count VI does not convert it to a federal cause of action. At the core of this claim are various alleged violations of Guam law, not federal law. The resolution of this claim primarily requires application and interpretation of local law, which should be resolved in the Superior Court of Guam. Accordingly, the court finds that proposed Count VI fails to provide this court with subject matter jurisdiction.

### 7. PAC Count VII - Alleged Violation of ARPA and Open Government Law

Proposed Count VII is identical to the original Count VI alleged in the Complaint. The PAC's Count VII generally asserts that GHURA failed to comply with Guam's Open Government Law when its board met to consider a resolution authorizing GHURA to accept a loan from the Governor for up to $10 million for community development projects. As discussed above, ARPA does not vest the Attorney General with a private right of action. Additionally, this cause of action, as pled, does not implicate a federal issue. Rather, the crux of the claim predominately involves application and interpretation of Guam laws, which are more appropriately addressed in the Superior Court of Guam, not this court, which is a court of limited jurisdiction. Consistent with the discussion above, the court finds that proposed Count VII does not arise under federal law, and the court lacks subject matter jurisdiction over the claim.

### 8. PAC Count VIII - Alleged Violation of ARPA and Guam Contract Laws

The allegations in proposed Count VIII are substantially identical to Count VII in that both

allege that the loan contracts between the Governor and GHURA violate Guam law because they were not submitted to the Attorney General for his approval, as required by Section 22601 of Title 5, Guam Code Annotated. Proposed Count VIII also includes a conclusory assertion[23] that the loan contracts also violate Section 22602 of Title 5, Guam Code Annotated.[24]

Consistent with its earlier ruling, to the extent that proposed Count VIII asserts a claim under ARPA, the Attorney General has failed to establish that he has a private right of action to assert such claim and also lacks Article III standing. Additionally, resolution of proposed Count VIII does not necessarily implicate a federal issue. The essence of proposed Count VIII are alleged violations of Guam law, and the Guam local courts are best suited for addressing matters arising under Guam law. The court finds that proposed Count VIII does not arise under federal law.

### 9. PAC Count IX - Alleged Violation of ARPA and Guam Law

Count IX of the PAC is identical to Count VIII of the original Complaint. Proposed Count IX essentially alleges that GEDA, not GHURA, was vested by the Legislature with authority to "acquire, construct, and provide for hospital facilities to serve the general public," that GEDA cannot transfer such power to GHURA or an autonomous agency, that GHURA has no authority

---

[23] While Paragraph 142 quotes to Section 22602, proposed Count VIII does not contain any other factual allegation to show how Section 22602 was violated. There is no factual allegation in the PAC that the Defendants did not submit a copy of the loan contracts to DOA for filing, recording and registration, nor is there any allegation that DOA failed to enroll said loan contracts on the public register.

[24] In its entirety, Section 22602 provides:

> A copy of any contract under which a payment may be made shall be submitted to the Department of Administration for filing, recording and registration. The Director of Administration shall cause a register to be kept of all such contracts with subsequent amendments, which register shall be open and available for public inspection during normal working hours. Certified copies of such contract with subsequent amendments may be obtained after paying the fee therefor set out in of this Chapter. No such contracts or amendments thereto shall be deemed valid or enforceable until it shall have been so submitted to the Department of Administration and enrolled on the public register.

5 GCA § 22602.

to "acquire, construct, and provide for hospital facilities," and that GHURA's actions are therefore void. PAG at ¶¶ 96, 98-99 and 101-102. As noted above with regard to original Count VIII, resolution of proposed Count IX does not implicate a federal issue. Instead, application and interpretation of local laws substantially predominate the allegation in proposed Count IX, which are more appropriately addressed in the local courts of Guam, not the federal court. Consistent with its ruling above, the court finds that proposed Count IX does not arise under federal law so as to confer this court with federal question jurisdiction.

### 10. PAC Count X - Alleged Violation of Guam Law

The PAC's Count X is similar to the original Count IX of the Complaint but includes the addition of six new paragraphs. *See* PAC at ¶¶ 156-61, ECF No. 20-1. In essence, proposed Count X asserts that the Governor and the conspirator defendants were aware that the land for the MMC Project was acquired in violation of Guam law, *id.* at ¶¶ 156-57, that in taking actions under the IGA and subgrant agreements, the conspirator defendants have violated federal and Guam law with regard to the need for environmental reviews and record keeping, *id.* at ¶ 158, and that such action have exposed the Government of Guam to federal clawback proceedings. *Id.* at ¶¶ 159-160.

The addition of the six new paragraphs do not cure the defects discussed above with regard to Count IX of the original Complaint. By its very terms, proposed Count X does not arise under federal law but instead is brought under the laws of Guam. Based on the discussion above, this court has found that supplemental jurisdiction is lacking because none of the Complaint's asserted causes of action arise under federal law, and the same is true with regard to the PAC. To the extent that the PAC asserts a claim that arises under federal law, the court recommends that the Chief Judge decline to exercise supplemental jurisdiction for the reasons set forth above.

### 11. PAC Counts XI and XII -Alleged Violations of Organic Act

Counts XI and XII of the PAC are new. Count XI asserts that GPA has sought the appointment of Special Attorneys General, and the PAC asserts that such appointment would violate the Organic Act. PAC at ¶¶ 164-65, ECF No. 20-1. In Count XII, the PAC asserts that the CCU is "an illegal, inorganic and unconstitutional body," and as such, the CCU "deprives the Governor of Guam" of her "Organic Act authority to supervise the government and to appoint the

heads of executive branch agencies as part of the Governor's cabinet." *Id.* at ¶¶ 169-70. Proposed Count XII further asserts that "the actions taken by the CCU, or by the GPA or the GWA at the direction or authorization of the CCU, are also illegal, inorganic and void ab initio[,]" including the obligation and expenditure of ARPA/SLFRF funds as set forth in the subgrant agreements with GEDA. *id.* at ¶¶ 171-72.

Proposed Counts XI and XII suffer from the same deficiency discussed *supra* with regard to Count I. As pled, these causes of action do not arise under federal law so as to confer this court with federal question jurisdiction. While the Organic Act is referenced, the claims allege matters of purely local concern. Construing all facts in favor of the Attorney General, he is using proposed Count XI to challenge the Supreme Court of Guam's decision in *In re Leon Guerrero*, 2024 Guam 18 (Guam Dec. 31, 2024), where that court stated that it was "well settled that the Attorney General must conform his conduct to that prescribed by the rules of professional ethics," and that "in the event of a conflict of interest or disagreement over the public interest with a [client] line agency, the Attorney General is required to appoint a special assistant attorney general to represent the agency through his common law power." *Id.* at ¶¶ 13 and 29. This appears to be an improper appeal of the *In re Leon Guerrero* decision. Whether a conflict of interest exists so as to warrant the appointment of a Special Attorney General is a matter concerning local issues and policies and is best left to the local courts to handle.

Count XII, which asks the court to determine whether the Guam law that created the CCU violates the Governor's Organic Act powers, also does not arise under federal law because it involves matters of local concern. The court also has serious concerns about whether the Attorney General has standing to raise such a challenge on behalf of the Governor, whose authority is allegedly being usurped.

Because proposed Counts XI and XII do not confer this court with federal question jurisdiction since they assert only local law claims and would not survive in this court absent the court's exercise of supplemental jurisdiction (which the below-signed judge has recommended the Chief Judge not exercise, *see supra*), the court finds that addition of these causes of action would be futile.

Having reviewed the PAC in its entirety, the court concludes that amendment would be futile because the PAC still fails to establish that this court has original jurisdiction over any of the asserted claims or that the Attorney General has standing, both statutory and under Article III, to assert claims under ARPA or the HCDA. Without original jurisdiction, this court cannot exercise supplemental jurisdiction over the claims arising under Guam law. Moreover, even if the Chief Judge found that this court has federal question jurisdiction over one or more claims in the PAC, the below-signed judge recommends that the court decline to exercise supplemental jurisdiction over the local law causes of action. Most, if not all, of the revised causes of action in the PAC primarily involve matters of local concern that require application and interpretation of Guam law, and where issues of Guam law predominate over any purported federal claim. Accordingly, said matters should be resolved in the Superior Court of Guam.

**D.      Motions to Consolidate**

The last motions before the court are the Attorney General's two Motions to Consolidate. *See* ECF Nos. 21 and 35. The Attorney General requests that 25-CV-00029 and 25-CV-00041 be consolidated with the instant action, asserting that the three cases involve common questions of law and fact with regard to the planning and development of the MMC Project.

Because the Attorney General has failed to meet his burden of establishing that the claims in the Complaint and the PAC arise under federal law, the court finds that it lacks subject matter jurisdiction over this action and this case should be dismissed. Accordingly, the court recommends that the Motions to Consolidate this case with 25-CV-00029 and 25-CV-00041 be denied.

**III.      CONCLUSION**

Based on the above analysis, the court finds that it lacks subject matter jurisdiction because federal law does not create the causes of action asserted in the Complaint and the PAC, nor is the Attorney General's right to relief necessarily dependent on the resolution of a substantial question of federal law. Additionally, because this court lacks original jurisdiction, it may not exercise supplemental jurisdiction over the cause of action that arise under purely local law. Accordingly,

///

///

the court recommends that the Chief Judge (1) grant the Defendants' Motion to Dismiss, (2) deny the Attorney General's Motion for Leave to File an Amended Complaint, (3) deny the Attorney General's Motions to Consolidate and (4) deny the Defendants' Motion to Strike as moot.

IT IS SO RECOMMENDED.

**/s/ Michael J. Bordallo**
**U.S. Magistrate Judge**
**Dated: Apr 07, 2026**

**NOTICE**

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**